J-S10040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JUSTIN CORLISS | |
| Appellee | No. 2091 EDA 2014 |

Appeal from the Suppression Order June 17, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001749-2013

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JUSTIN CORLISS | |
| Appellee | No. 2105 EDA 2014 |

Appeal from the Order June 17, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0002173-2013

BEFORE: GANTMAN, P.J., STABILE, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 14, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Monroe County Court of Common Pleas, which denied the Commonwealth's motion *in limine* to admit certain evidence at the trials of Appellee, Justin Corliss. We reverse and remand for further proceedings.

_____

*Retired Senior Judge assigned to the Superior Court.

The relevant facts and procedural history of this appeal are as follows. Appellee operated a pet store in Monroe County. In 1993, Appellee commenced a romantic relationship with his coworker, K.V. Shortly thereafter, Appellee moved into the residence K.V. shared with her minor daughter, R.V. In 1995, when R.V. was approximately nine years' old, Appellee began to molest R.V. At first, Appellee would tickle R.V. when they played together. Appellee's behavior escalated, however, and he began placing his hands down R.V.'s pants. Appellee digitally penetrated R.V. on multiple occasions between 1995 and 1997. The abuse occurred at K.V.'s residence, often while K.V. was in another room. On one occasion, Appellee inappropriately touched R.V. during a car trip to New York. The molestation continued until 1997, when Appellee moved out of K.V.'s residence. R.V. did not immediately report the abuse.

In 1996, fourteen-year-old D.G. began to work at Appellee's pet store. D.G.'s father was a regular customer at the pet store, and Appellee had known D.G. since she was eleven years' old. After D.G. started working at the pet store, Appellee would tickle her. Appellee's behavior escalated, and he began placing his hands down D.G.'s pants. Eventually, Appellee and D.G. engaged in sexual intercourse. Appellee also performed oral sex on D.G. on multiple occasions.

The abuse occurred at the pet store during regular business hours. On two occasions, D.G.'s twelve-year-old friend witnessed the sexual activity.

Appellee also fondled D.G. during car trips to New York. D.G. testified that Appellee took her on these trips "almost every single Monday" to pick up supplies for the pet store. (N.T. Hearing, 3/18/14, at 31). In addition to the liaisons at work, Appellee molested D.G. at K.V.'s residence at least once. In 1997, D.G.'s mother learned about the abuse and immediately informed police.

At No. 743 of 1997, the Commonwealth charged Appellee with multiple offenses related to the molestation of D.G. Following a trial in 1998, a jury convicted Appellee of two (2) counts of statutory sexual assault and one (1) count each of aggravated indecent assault, indecent assault, and corruption of minors. On August 20, 1998, the court sentenced Appellee to an aggregate term of four (4) to ten (10) years' imprisonment. This Court affirmed the judgment of sentence on November 30, 1999. **_See Commonwealth v. Corliss_**, 750 A.2d 366 (Pa.Super. 1999) (unpublished memorandum).

Prior to the start of the 1998 trial, Appellee met C.T. at the pet store. Appellee and C.T. married, and C.T. became pregnant before Appellee's sentencing hearing. C.T. gave birth to Appellee's daughter, C.C., in 1999 while Appellee was incarcerated. Appellee remained incarcerated until 2008. Upon his release, Appellee returned to live with C.T. and C.C. C.T. had no concerns about Appellee being around C.C., because Appellee had convinced C.T. that he was actually innocent of the charges pertaining to D.G.

When Appellee would play with C.C., C.T. noticed that Appellee tickled the child and scratched the child's back. The tickling started to bother C.C., and she asked Appellee not to touch her, but C.T. did not intervene. Appellee's relationship with C.T. ended in 2010, after C.T. discovered that Appellee was having an affair with another teenager. In 2013, C.C. informed C.T. that Appellee had molested her. C.C. claimed that Appellee would put his hands down her pants and touch her vagina, exposed his penis to C.C., and attempted to force the child to perform oral sex on him.

Police arrested Appellee for the offenses against C.C. in July 2013. The media reported on Appellee's arrest, and R.V. saw the coverage. R.V. decided to contact police and inform them of the abuse she suffered from 1995 until 1997. At No. 1749 of 2013, the Commonwealth charged Appellee with sex offenses committed against C.C. At No. 2173 of 2013, the Commonwealth charged Appellee with sex offenses committed against R.V.[1] On September 24, 2013, the Commonwealth informed Appellee that Nos. 1749 and 2173 of 2013 would be joined for trial. Appellee filed counseled pretrial motions on October 3, 2013, including a motion to sever the cases. Ultimately, the court granted Appellee's motion to sever the cases for trial.

On November 15, 2013, the Commonwealth filed notice of its intent to

_____

[1] At No. 1748 of 2013, the Commonwealth also charged Appellee with offenses related to his failure to register with state police pursuant to Megan's Law. The matters at No. 1748 of 2013 are not at issue in this appeal.

introduce "other bad acts" evidence, pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth sought to introduce evidence of the molestation of C.C. at trial for the offenses against R.V. Similarly, the Commonwealth sought to introduce evidence of the molestation of R.V. at trial for the offenses against C.C. The Commonwealth also sought to introduce evidence of the molestation of D.G. at both trials. On February 24, 2014, the Commonwealth filed a motion *in limine*, asking the court to allow the admission of the Rule 404(b) evidence at Appellee's trials.[2] The court conducted a hearing on March 18, 2014. At that time, the court received testimony from K.V. (victim R.V.'s mother), D.G. (prior victim), and C.T. (victim C.C.'s mother).

---

[2] Before the parties litigated the Commonwealth's motion *in limine*, Appellee requested to proceed *pro se*. On January 15, 2014, the court conducted an oral colloquy to determine whether Appellee's waiver of counsel was knowing, voluntary, and intelligent. **See** Pa.R.Crim.P. 121 (stating defendant can waive right to trial counsel; to ensure defendant's waiver is knowing, voluntary, and intelligent, court must confirm defendant understands right to be represented by counsel, right to free counsel if indigent, nature and elements of charges, permissible range of sentences and/or fines, defendant is bound by all rules of procedure, and defendant faces waiver of defenses, rights, and challenges to certain errors). Following the colloquy, the court permitted Appellee to proceed *pro se*. The court also provided Appellee with standby counsel. Appellee is *pro se* on appeal. To avoid an appealable issue arising from subsequent proceedings, however, the trial court must again colloquy Appellee to confirm his continued waiver of counsel, regardless of Appellee's prior waiver or experience with the criminal justice system. **See generally Commonwealth v. McDonough**, 571 Pa. 232, 812 A.2d 504 (2002) and **Commonwealth v. Houtz**, 856 A.2d 119 (Pa.Super. 2004) (explaining and modifying **Commonwealth v. Payson**, 723 A.2d 695 (Pa.Super. 1999)).

On June 17, 2014, the court entered an order and opinion denying the Commonwealth's motion *in limine*. The court found the Commonwealth's other bad acts evidence was relevant to the pending cases at Nos. 1749 and 2173 of 2013. Further, the court determined the evidence was probative of a common scheme, plan, or design in the pending cases, and the evidence was not too remote in time. Nevertheless, the court concluded the probative value of the evidence did not outweigh its potential for undue prejudice. On this basis, the court denied the Commonwealth's motion *in limine*.[3]

The Commonwealth timely filed notices of appeal at Nos. 1749 and 2173 of 2013 on July 16, 2014.[4] On July 17, 2014, the court ordered the Commonwealth to file concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The Commonwealth timely filed Rule 1925(b) statements on July 23, 2014. The Commonwealth subsequently filed an application to consolidate the appeals, which this Court granted on November 17, 2014.

---

[3] As part of its order denying the Commonwealth's motion *in limine*, the court also ruled that the Commonwealth could not introduce other bad acts evidence at No. 1748 of 2013, in the Commonwealth's prosecution of Appellee for failing to register under Megan's Law. The Commonwealth does not challenge this aspect of the court's order.

[4] Pursuant to Pa.R.A.P. 311(d), the Commonwealth certified in good faith in its notices of appeal that the order denying its motion *in limine* substantially handicapped the prosecution. Accordingly, this appeal is properly before us for review. *See Commonwealth v. Cosnek*, 575 Pa. 411, 836 A.2d 871 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

The Commonwealth raises two issues for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION IN PROHIBITING THE COMMONWEALTH FROM INTRODUCING EVIDENCE OF [APPELLEE'S] BAD ACTS BY CONCLUDING THAT THE PROBATIVE VALUE DID NOT OUTWEIGH THE PREJUDICIAL EFFECT, AFTER CONCLUDING THE EVIDENCE WAS RELEVANT AND ADMISSIBLE UNDER THE COMMON SCHEME, PLAN, OR DESIGN EXCEPTION TO PA.R.E. 404(b)?
>
> DID THE TRIAL COURT ABUSE ITS DISCRETION IN PROHIBITING THE COMMONWEALTH FROM INTRODUCING EVIDENCE OF [APPELLEE'S] BAD ACTS UNDER THE *RES GESTAE* EXCEPTION TO PA.R.E. 404(b)[?]

(Commonwealth's Brief at 5).

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Drumheller**, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting **Commonwealth v. Stallworth**, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." **Commonwealth v. Harris**, 884 A.2d 920, 924 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007).

In its first issue, the Commonwealth asserts the trial court denied the motion *in limine* based upon the court's mistaken belief that the

Commonwealth does not need evidence of Appellee's other bad acts to prove that Appellee committed the offenses at issue in Nos. 1749 and 2173 of 2013. The Commonwealth emphasizes it has no physical evidence to corroborate the testimony of victims, C.C. or R.V. Although the uncorroborated testimony of a victim is enough to convict, the Commonwealth anticipates Appellee will attack the victims' credibility with their failure to make prompt complaints against him. The Commonwealth insists testimony against Appellee from multiple victims in each case would check Appellee's challenge about the lack of prompt complaints; thus, evidence from the other victims is probative and necessary to the Commonwealth's case. The Commonwealth also contends:

> [Appellee] denies that the touching occurred, and since the uncorroborated testimony of the alleged victim[s] in [these] case[s] might reasonably lead a jury to determine that there was a reasonable doubt as to whether [Appellee] committed the crime[s] charged, it is fair to conclude that the other crimes evidence is necessary for the prosecution of the case. To hold otherwise would effectively nullify Rule 404(b) and make it virtually impossible to introduce any bad act evidence in a "he said, she said" sexual assault case.

(Commonwealth's Brief at 21). The Commonwealth concludes the court should have granted the motion *in limine* and allowed the Commonwealth to introduce its Rule 404(b) evidence during both trials, at Nos. 1749 and 2173 of 2013. We agree.

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

*Drumheller, supra* at 135, 808 A.2d at 904 (quoting *Stallworth, supra* at 363, 781 A.2d at 117-18). "Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404 governs the admissibility of other bad acts evidence as follows:

**Rule 404. Character Evidence; Crimes or Other Acts**

\* \* \*

**(b) Crimes, Wrongs or Other Acts.**

*(1) Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(3) Notice in a Criminal Case.* In a criminal case the prosecutor must provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such

evidence the prosecutor intends to introduce at trial.

*Comment*:

\* \* \*

Pa.R.E. 404(b)(1) is identical to F.R.E. 404(b)(1). It prohibits the use of evidence of other crimes wrongs or acts to prove a person's character.

Pa.R.E. 404(b)(2), like F.R.E. 404(b)(2), contains a non-exhaustive list of purposes, other than proving character, for which a person's other crimes wrongs or acts may be admissible. But it differs in several aspects. First, Pa.R.E. 404(b)(2) requires that the probative value of the evidence must outweigh its potential for prejudice. When weighing the potential for prejudice of evidence of other crimes, wrongs, or acts, the trial court may consider whether and how much such potential for prejudice can be reduced by cautionary instructions. ***See Commonwealth v. LaCava***, 542 Pa. 160, 666 A.2d 221 (1995). When evidence is admitted for this purpose, the party against whom it is offered is entitled, upon request, to a limiting instruction. ***See Commonwealth v. Hutchinson***, 571 Pa. 45, 811 A.2d 556 (2002). Second, the federal rule requires the defendant in a criminal case to make a request for notice of the prosecutor's intent to offer evidence of other crimes, wrongs or acts. This issue is covered in Pa.R.E. 404(b)(3) which is consistent with prior Pennsylvania practice in that the requirement that the prosecutor give notice is not dependent upon a request by the defendant.

Pa.R.E. 404(b)(1)-(3) and *Comment*. Thus, Rule 404(b) permits the admission of crimes or other acts evidence under certain instances. ***Commonwealth v. Russell***, 938 A.2d 1082, 1092 (Pa.Super. 2007). Further, Rule 404(b) "is not limited to evidence of crimes that have been proven beyond a reasonable doubt in court. It encompasses both prior

- 10 -

crimes and prior wrongs and acts, the latter of which, by their nature, often lack 'definitive proof.'" ***Commonwealth v. Ardinger***, 839 A.2d 1143, 1145 (Pa.Super. 2003) (quoting ***Commonwealth v. Lockcuff***, 813 A.2d 857, 861 (Pa.Super. 2002), *appeal denied*, 573 Pa. 689, 825 A.2d 638 (2003)).

"[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa.Super. 2004). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." ***Id.*** Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. ***Commonwealth v. Chmiel***, 585 Pa. 547, 889 A.2d 501 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006). When offered for a legitimate purpose, other acts evidence is admissible if its probative value outweighs its potential for unfair prejudice. ***Commonwealth v. Hairston***, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

"The particular prejudice that Rule 404(b)(3) seeks to prevent is the misuse of the other-offense evidence—specifically, that jurors might convict a defendant because they perceive the defendant has a bad character or propensity to commit crimes." ***Commonwealth v. Cascardo***, 981 A.2d

245, 251 (Pa.Super. 2009), *appeal denied*, 608 Pa. 652, 12 A.3d 750 (2010). ***See also*** Pa.R.E. 403 *Comment* (stating: "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially").

> Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence.
>
> However, evidence will not be prohibited merely because it is harmful to the defendant. Exclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based upon something other than the legal propositions relevant to the case.

***Commonwealth v. Page***, 965 A.2d 1212, 1220 (Pa.Super. 2009), *appeal denied*, 621 Pa. 665, 74 A.3d 125 (2013) (internal citations and quotation marks omitted).

A common plan, scheme, or design may be relevant to establish any element of a crime. ***Commonwealth v. Einhorn***, 911 A.2d 960 (Pa.Super. 2006), *appeal denied*, 591 Pa. 723, 920 A.2d 831 (2007).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence

reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. Tyson*, 2015 PA Super 138, 7-8 (filed June 10, 2015) (*en banc*) (quoting *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008)).

"While remoteness in time is a factor to be considered in determining the probative value of…evidence under this theory, the importance of the time period is inversely proportional to the similarity of the [acts] in question." *Commonwealth v. O'Brien*, 836 A.2d 966, 971 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004). *See also Commonwealth v. Luktisch*, 680 A.2d 877 (Pa.Super. 1996) (holding common scheme exception justified admission of testimony regarding defendant's previous sexual assaults despite six-year lapse between periods of abuse, where three victims were nearly same age, victims were either daughter or step-daughter of defendant and lived with him when acts occurred; and pattern of molestation—from improper touching to oral sex to sexual intercourse—was highly similar with respect to two victims).

Instantly, the trial court issued a lengthy opinion with its order denying

the Commonwealth's motion *in limine*.  In its opinion, the court first

determined that the Commonwealth's other bad acts evidence was relevant:

> In case [No. 1749 of 2013], [Appellee] is charged with
> various sex offenses against C.C. that occurred in 2009
> and/or 2010.  The evidence sought to be introduced by the
> Commonwealth is testimony of another victim, who was a
> minor at the time, as to [Appellee's] alleged sexual abuse
> of her.  This evidence tends to make the fact that
> [Appellee] committed a similar crime more probable.  If
> the Commonwealth's allegations in the present case are
> accepted as true, the evidence of the incidents that
> occurred in 1995-1997 as to R.V. (charged in case [No.
> 2173 of 2013]) when she was 9-11 years' old would be
> relevant in demonstrating [Appellee's]…common scheme,
> plan or design to sexually assault young girls….  This is
> also true of the conviction in [No. 743 of 1997] where the
> victim was sexually assaulted by [Appellee] when she was
> 14 and [Appellee] had contact with her starting when she
> was 11 years' old.  Accordingly, we hold that the bad acts
> involving incidents of sexual abuse by [Appellee]…are
> relevant.

(**See** Trial Court Opinion, filed June 17, 2014, at 6.)  The court also found

the evidence was probative of a common scheme, plan or design in the

pending cases:

> The factual similarities of the allegations involving R.V.
> [(No. 2173 of 2013)], D.G. [(No. 743 of 1997)], and C.C.
> [(No. 1749 of 2013)] are somewhat convincing.  The
> similarities are that all of the charges in each of these
> three matters involve [Appellee] sexually assaulting young
> girls.  All of the victims share similar personal
> characteristics.  Each girl was white, between the ages of 9
> and 14, and each girl was in a close family relationship or
> in a position of trust with [Appellee].  For instance, C.C.
> and R.V. were the daughters of women [Appellee] lived
> with and he lived with the victims too.  D.G. came into
> [Appellee's] store as a customer with her family, and

[Appellee] quickly befriended her.[2]  In the two pending sexual assault cases, [Appellee] began a relationship with the victims' mothers, moved in with them, and soon after, began sexually assaulting them.[3]  In the case of D.G., for which [Appellee] was convicted, he maintained a very close relationship with D.G. and told her he loved her.  In all three cases, [Appellee] was in a position of trust over the victims and he continued assaulting them until he moved out, or in the case of D.G., was arrested by the police.

[2] We note that D.G. was 14 when [Appellee] had oral and vaginal intercourse with her, but [Appellee] started touching and tickling her when she was as young as 11 and 12 years old, and putting his hand inside her clothes when she was 12.

[3] We note [Appellee] initially moved in with C.C.'s mother after leaving R.V.'s mother's house, but C.C. was not yet born.  But ten years later, upon [Appellee's] release from prison, he moved back in with C.C.'s mother and then allegedly began assaulting C.C. soon thereafter.

[Appellee] met R.V.'s and C.C.'s mothers through work, and he met D.G. at his own store.  [Appellee] began touching all three girls by tickling them.  In all three matters, it progressed to placing his hands under their clothes.  The touching continued until he eventually touched their vaginas.  [Appellee] eventually had vaginal intercourse with one victim.  In all three cases, the order of progression was the same; [Appellee] just progressed further in some cases.

In R.V. and D.G.'s case, [Appellee] drove the victims with him to New York to obtain pet supplies for his store, and during the trips, he sexually assaulted the girls.  In the case of both R.V. and C.C., the incidents took place in their home, often while the victims' mothers were present in another room.  [Appellee] had sexual encounters with D.G. in his store during business hours when anyone could walk into the store.  On at least one occasion, [Appellee] had sex with D.G. while a friend of D.G. was present and watched.  On another occasion, [Appellee] took D.G. to

> R.V.'s house, where he was living at the time, and had sex with her there. Anyone could have come home at that time. This degree of similarity is an important factor in determining the admissibility of other crimes or acts as relevant to show a common scheme or plan.

(*Id.* at 20-21).

Nevertheless, the court concluded the probative value of the evidence did not outweigh its potential for undue prejudice. The court emphasized, "[T]he Commonwealth does not need evidence of the other two cases to prove the facts in each case." (*Id.* at 30). Further, the court insisted:

> [The admission of] evidence of the matters involving R.V. and the 1998 conviction into the case involving C.C., and *vice versa*, would inflame a jury into declaring guilt based upon the other allegations. A prior conviction is extremely prejudicial and rarely allowed as evidence in any criminal case due to the prejudicial effect on a jury. Specifically, in this matter, [Appellee's] prior conviction[s] [were] for statutory sexual assault, aggravated indecent assault, indecent assault, and corruption of minors in a matter involving a 14-year-old victim. [Appellee] ultimately served ten years for the offense[s]. Evidence of [these] conviction[s], events surrounding the conviction[s], and the resulting sentence would severely prejudice the jury. The jury could certainly convict on the theory that if he did it before, he could do it again. A cautionary instruction would have little effect on a jury due to this evidence.

(*Id.* at 31).

Here, the trial court ignored the dearth of physical evidence to support the victims' accounts of the molestation. Likewise, the court does not mention Appellee's repeated denials of the allegations against him. Thus, the uncorroborated testimony of each alleged victim could lead a jury to reasonable doubt on whether Appellee committed the offenses against that

victim. Under these circumstances, the other bad acts evidence is necessary for the Commonwealth's prosecutions. *See Commonwealth v. Gordon*, 543 Pa. 513, 673 A.2d 866 (1996) (holding evidence of defendant's prior convictions for indecent assault was not unduly prejudicial in prosecution for another indecent assault; evidence was relevant to prove, *inter alia*, common scheme or plan, and evidence was necessary for prosecution of case since defendant denied nonconsensual touching of victim occurred, and victim's testimony was uncorroborated). *See also Commonwealth v. Aikens*, 990 A.2d 1181 (Pa.Super. 2010), *appeal denied*, 607 Pa. 694, 4 A.3d 157 (2010) (holding evidence of defendant's prior sexual abuse of his daughter was admissible to show common scheme, design, or plan in prosecution for corruption of minor, endangering welfare of child, and indecent assault; both victims were defendant's biological daughters, both victims were of similar age when abuse occurred, defendant initiated contact with both victims during overnight visits to his apartment, and defendant showed pornographic movie to both victims); *O'Brien, supra* (holding evidence of defendant's prior sexual assaults of children was admissible to show common scheme, plan or design in prosecution for sexual assault of minor; all charges stemmed from defendant's sexual assaults on young boys, all victims shared similar personal characteristics, crimes were not too remote in time, and probative value of other crimes evidence outweighed prejudicial effect). We conclude the court erred in denying the

- 17 -

Commonwealth's motion *in limine*. Based upon the foregoing, we reverse that portion of the order denying the Commonwealth's motion *in limine* to admit other bad acts evidence at Nos. 1749 and 2173 of 2013, and we remand for further proceedings.[5, 6]

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2015

_____

[5] Due to our resolution of the Commonwealth's first issue, we need not address the second claim raised on appeal.

[6] In August 2014, Appellee filed two *pro se* motions to dismiss the Commonwealth's appeals for lack of jurisdiction. On September 30, 2014, this Court denied Appellee's motions without prejudice to Appellee's right to raise identical issues before the merits panel. Appellee's brief on appeal again raises his challenges to subject matter jurisdiction. Specifically, Appellee alleges certain deficiencies with his preliminary hearing as well as violations of the statutes of limitations. The certified record reveals Appellee raised these arguments with the trial court, which denied relief. The court also denied Appellee's *pro se* motion to certify interlocutory order for appeal, where Appellee sought appellate review of the same claims he now attempts to raise in this appeal. On this record, we deny Appellee's *pro se* motions to dismiss. *See* Pa.R.A.P. 341 (explaining appeal may be taken from final order; final order is any order that disposes of all claims and parties, is expressly defined as final order by statute, or is entered as final order pursuant to Rule 341(c)).