J-A24037-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
             Appellee   :
  :
               v.   :
  :
STORM E. MASON,   :
  :
             Appellant   :   No. 137 EDA 2015

Appeal from the Judgment of Sentence Entered August 14, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0000681-2013

BEFORE: PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:        **FILED OCTOBER 13, 2015**

Storm E. Mason (Appellant) appeals from the judgment of sentence entered following his convictions for one count of third-degree murder, one count of carrying a firearm without a license, one count of carrying a firearm on public streets in Philadelphia, and one count of possessing instruments of a crime. We affirm.

The trial court set forth the relevant factual history of this case as follows.

> On the night of October 15, 2012, [Appellant] and his girlfriend, Deborah Reed, went to Big Fella's Bar located at 1348 South 33rd Street in Philadelphia, Pennsylvania. When [Appellant] entered Big Fella's Bar, he saw a woman [whom] he knew and greeted the woman with a hug. Matthew Smith, the nephew of the woman [Appellant] hugged, pushed [Appellant] and told him not to hug Smith's aunt. This upset [Appellant] and made him angry.

* Retired Senior Judge assigned to the Superior Court.

Shortly thereafter, [Appellant], Reed, and [Appellant's] friend Kylif, left the bar. Smith and his cousin, Lamont Griffin, then left the bar as well. While everyone was gathered outside, [Appellant] and Kylif started to "play fight" with each other. [Appellant] then attempted to get Smith to "play fight" as well. [Appellant] continued to provoke Smith until Smith punched [Appellant] and [Appellant] fell into the street.

[Appellant] then picked himself up off the ground and told Smith, "Give me a fair one, a fair one." Smith replied, "Alright, alright," and started to walk towards [Appellant] in the street. [Appellant] then reached into his jacket and pulled out a gun and started to fire at Smith. Smith turned around and attempted to run after [Appellant] opened fire. Smith was hit by three bullets and fell to the ground. [Appellant] started to run away after Smith fell. However, [Appellant] stopped, turned back, and returned towards Smith, firing two more bullets at Smith's body. [Appellant] shot Smith a total of five times. Smith was shot on the outside of his left shoulder, on the left side of his abdomen, on the inside of his calf, and twice on the left side of his back.

Police officers responded to the scene and observed Smith on the ground, bleeding and unresponsive. Smith was transported to the University of Pennsylvania Hospital where he was ultimately pronounced dead. Police officers recovered [five] fired .380 cartridge cases from the scene of the shooting.

Trial Court Opinion, 2/20/2015, at 2-3 (citations and footnotes omitted).

Appellant was arrested four days after the shooting. N.T., 6/17/2014, at 220. During that four-day timeframe, Reed stayed with Appellant at various locations. *Id.* at 221-235. Following Appellant's arrest, she gave a statement to police implicating Appellant. *Id.* at 237.

Prior to trial, the Commonwealth filed a motion *in limine*, pursuant to Pa.R.E. 404(b), seeking to introduce evidence of a 2007 incident, in which

Appellant pistol whipped Reed.[1] The Commonwealth argued that this evidence was relevant to explain Reed's state of mind following the homicide and her delay in reporting to authorities Appellant's involvement in Smith's death. Following a hearing on the issue, the trial court ruled in Appellant's favor, excluding the evidence of Appellant's prior bad acts **unless** defense counsel "open[ed] the door by referencing or trying to create an inference in [his] argument or [his] cross-examination that this was a delayed reporting and therefore [Reed] shouldn't be believed." N.T., 6/16/2014, at 20.

On direct examination, Reed testified to her observations, whereabouts, and interactions with Appellant before, during, and after the shooting. N.T., 6/17/2014, at 212-238. Because Appellant had threatened her and her family following the shooting, Reed testified that she only spoke to police after Appellant's arrest. *Id.* at 230.

During Reed's cross-examination, defense counsel questioned her at length regarding whether there was an operating telephone, landline or mobile, available to her at each location she traveled to after the shooting; whether she had used any of the available phones in the days after the shooting; and, if so, whom she had called. N.T., 6/18/2014, at 36-37, 39-40, 41, and 49.

---

[1] Appellant was arrested for this offense, but the charges were later withdrawn.

At the end of cross-examination, the trial court revisited the ruling made *in limine*, and determined that defense counsel had opened the door to Reed's delay in reporting; therefore, extrinsic evidence of the prior assault was admissible to rebut such an inference. *Id.* at 56-58. ("I did say if you raised an inference that [Reed] delayed [in] reporting, that I would allow that [incident] to come in as an explanation, if in fact that was the explanation. I don't know if it is or it isn't. But you went over chronologically … each place that she was, how many days transpired in great detail, the availability of a telephone, was there a telephone there, did you have access to a cellphone, was there a land line phone. You didn't ask the question did you call the police, but we know she didn't call the police because that came out already that she didn't contact the police until after his arrest. I can't think of any reason that you would have covered in great detail her activities or access to a telephone on all those different days, when she got up, when she went to sleep, without trying to create an inference in the jury's mind as to if she believed that [Appellant] acted in the manner in which she testified, why didn't she call the police. That is the only possible reason, and so I expressed my opinion that I would allow [the ADA] on redirect to come back now and ask [Reed].")

In response, counsel argued that his cross-examination was designed to point out inconsistencies in Reed's prior statements in order to impeach her credibility. *Id.* at 58-63. The trial court gave counsel the benefit of the

- 4 -

doubt as "an officer of the court" and accepted as true his assertions regarding the purpose of his detailed cross-examination, but concluded that the door had been opened and permitted the Commonwealth to introduce the evidence of Appellant's prior bad acts.

Thus, on re-direct examination, Reed testified to various violent interactions with Appellant, including the 2007 pistol whipping incident. *Id.* at 86-87. During and immediately following this testimony, the trial court issued two limiting instructions to the jury, directing them to consider Reed's testimony about Appellant's prior violent acts for the limited purpose of its bearing on her credibility and her conduct following the shooting. *Id.* at 86-88. The trial court specifically instructed the jury that it could not consider this testimony to be probative of whether Appellant was a violent person. *Id.* at 86. In the final charge to the jury, the trial court issued a third limiting instruction regarding this testimony. N.T., 6/19/2014, at 190-91.

On June 20, 2014, at the completion of the jury trial, Appellant was convicted of the aforementioned offenses.[2] On August 14, 2014, Appellant was sentenced to an aggregate term of 24 to 48 years of incarceration. Appellant filed timely post-sentence motions, which were denied on December 9, 2014. This timely-filed appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

---

[2] The charge of carrying a firearm without a license was severed. The trial court found Appellant guilty of that charge immediately following the jury trial.

- 5 -

Appellant raises one issue for this Court's review.

Did the lower court err when it allowed the prosecutor[,] on redirect examination of a non-party witness, to elicit extrinsic evidence on a collateral matter, regarding a prior bad act, to bolster the witness's believability, and explain her behavior, where the prior bad act was too remote in time and was a single isolated incident, to be relevant on any issue at trial?

Appellant's Brief at 7 (unnecessary capitalization and trial court's answer omitted).

Appellant's claim is multifold. First, he claims that "defense counsel, having moved *in limine* to exclude the prejudicial testimony concerning the alleged prior crime and having obtained a favorable ruling, was entitled to rely upon that determination." Appellant's Brief at 37. Next, Appellant contends that it was the Commonwealth that opened the door to the prior bad acts testimony, and he was unfairly punished as a result. Appellant's Brief at 38-45. Specifically, Appellant maintains his cross-examination of Reed was designed to respond to the Commonwealth's direct examination, which placed in issue "the matter of [Reed's access to and use of] telephones" in the days following the shooting. *Id.* Finally, Appellant contends that the trial court's limiting instruction was insufficient to cure the prejudice suffered by Appellant. *Id.* at 46-51.

We address Appellant's claims mindful of the following. "[T]he admissibility of evidence is a matter addressed to the sound discretion of the trial court and ... an appellate court may only reverse upon a showing that the trial court abused its discretion. An abuse of discretion is not a mere

error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." ***Commonwealth v. Collins***, 70 A.3d 1245, 1251-52 (Pa. Super. 2013) (citations omitted).

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

It is well-established that "evidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." ***Commonwealth v. Melendez–Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(1)-(2).

Appellant's first contention, that he was entitled to rely upon the "favorable ruling" *in limine*, is a mischaracterization of the trial court's determination and does not entitle Appellant to relief. The record reveals that, contrary to Appellant's argument, the court's ruling could be revisited if Appellant opened the door to such testimony on cross-examination.

Citing to nine places in the record where Reed discussed telephones on direct examination, Appellant next claims that it was the Commonwealth that opened the door to the prior bad acts testimony. Appellant's Brief at 38-43. However, a fair reading of Reed's testimony on direct examination does not create an inference of delayed reporting: three of Reed's statements refer to Appellant's calling a gypsy cab at some point following the shooting, N.T., 6/17/2014, at 224, 225; two refer to when and if Reed spoke to her mother following the shooting, *id.* at 226, 232; and the rest reference Appellant's use of phones in the days following the shooting. *Id.* at 226-27, 228, 232. Moreover, only two of these comments, those related to Reed's conversations with her mother, were made in response to the Commonwealth's direct questions about telephone use. By contrast, counsel's cross-examination focused on Reed's access to and use of telephones in the days following the shooting.

Based on a fair reading of the notes of testimony, we find no abuse of discretion in the trial court's determination that Appellant's detailed cross-examination, and not the Commonwealth's limited questioning regarding

- 8 -

telephones, created an inference of delayed reporting. Appellant had been warned prior to trial that creating such an inference would result in the admission of Appellant's prior bad acts. Nonetheless, he questioned Reed at length regarding her access to and usage of telephones in the days following the shooting. Under these circumstances, we discern no error in the trial court's decision to admit Reed's testimony, as it was admissible to counter the inference that she delayed in reporting, as well as to explain Reed's fear of Appellant and her conduct following Smith's death.[3]

Moreover, we agree with the Commonwealth that the probative value of this evidence did not outweigh its prejudicial effect. The trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged." **Commonwealth v. Lark**, 543 A.2d 491, 501 (Pa. 1988). **See also Commonwealth v. Dillon**, 5925 A.2d 131, 141 (Pa. 2007) ("Evidence will not be prohibited merely because it is harmful to the defendant."). The evidence of Appellant's prior violent interactions with

---

[3] Indeed, evidence of Appellant's prior bad acts was arguably admissible following Reed's testimony on direct examination wherein she stated that, following the shooting, Appellant stabbed her on the head, hand, and ear with a fork, and threatened to kill her and her family if they spoke to police. N.T., 6/17/2014, at 228-231.

Reed, introduced for legitimate purposes, was not unduly prejudicial, nor was it likely to have an undue influence on the jury.

Additionally, we are cognizant that, when examining the potential for undue prejudice, a limiting instruction may ameliorate the prejudicial effect of the proffered evidence. *See e.g. Commonwealth v. Hutchinson*, 811 A.2d 556 (Pa. 2002). As discussed above, during and immediately following Reed's testimony, the trial court gave a limiting instruction to the jury, informing them that they were to consider her statements not as evidence of Appellant's guilt, but for the limited effect the prior incidents had on Reed's state of mind. In the final charge, the trial court reiterated this ruling. Jurors are presumed to follow the trial court's instructions. *Commonwealth v. Baker,* 614 A.2d 663, 672 (Pa. 1992). The trial court's instructions to the jury in this case properly limited the use of the prior bad acts testimony. *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014) (holding that the trial court's limiting instructions were sufficient to overcome the prejudicial effect of prior bad acts evidence). As discussed above, the prior bad acts evidence in the instant case was properly admitted, albeit for a limited purpose. Thus, we are unconvinced that the trial court's three limiting instructions were somehow deficient.

For all of the foregoing reasons, we conclude that the trial court did not commit error in admitting Reed's testimony. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/13/2015</u>