811 A.2d 556

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Steven HUTCHINSON, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 15, 2001.

Decided Oct. 24, 2002.

Reargument Denied Dec. 30, 2002.

46

48

James S. Bruno, Philadelphia, for Steven Hutchinson.

Catherine Marshall, Frederick A. Pettit, Hugh J. Burns, Jr., Philadelphia, for Commonwealth of Pennsylvania.

Before: ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice NIGRO.

On December 10, 1999, a jury found Appellant Steven Hutchinson guilty of first-degree murder, carrying firearms on public streets, possessing instruments of crime, and two counts of recklessly endangering another person. Following a penalty hearing, the jury sentenced Appellant to death. Appellant appealed to this Court,[1] and we now affirm.

1. Pursuant to 42 Pa.C.S. § 9711(h), this Court has automatic jurisdiction to review the trial court's judgment of a sentence of death.

On September 16, 1997, Appellant's girlfriend of nearly one year, Stephanie Epps, was shot and killed in the lobby of her apartment building. Epps's children, nine-year-old Philip and seven-year-old Desiree, were standing with Epps at the time and witnessed the shooting. Both Philip and Desiree told police that the shooter was a man they knew as "Mr. Steve," who had been living with their family for over a month. Both children identified Appellant from a photograph as "Mr. Steve." On January 1, 1998, Appellant was arrested in Las Vegas, Nevada, and charged with the murder and related offenses.

At trial, Philip testified that on the day of the shooting, Epps and Appellant met Philip and Desiree at their after-school center. Philip witnessed his mother and Appellant arguing. Philip testified that when Epps and the children left the center in Epps's car, Appellant followed them in his black Lexus. During the ride, Epps gave Philip a quarter to call his aunt to tell her that Appellant was following them. After both cars arrived at Epps's apartment building, Philip again saw his mother and Appellant arguing. He testified that after the argument ended, Appellant followed his mother, his sister, and him into the building. Philip testified that, once inside the building, Appellant shot at his mother four or five times as they were waiting for the elevator. According to the medical examiner, two of those bullets struck Epps, one in the head and one in the abdomen.

Eugene Green, a resident of Epps's apartment building, testified that he had just exited a bus on the afternoon of September 16, 1997, when he observed a black Lexus leaving the parking lot of the apartment complex. Green testified that he had seen Appellant driving a black Lexus in the past. After observing the car leaving, Green saw Philip and Desiree running toward him, calling for help because their mother had been shot. Green helped the children call the police from a convenience store. One of the responding officers, who brought the children's father to the scene of the crime, testified that when the children saw their father, they ran up

to him, and Desiree told him that "Mr. Steve" shot her mother.

Epps's sister, Jennifer Coleman Pugh, also testified at trial. Pugh stated that Epps had called her on Friday, September 12, 1997, sounding upset. That same day, Epps went over to Pugh's house and told Pugh that Appellant had slapped her and that she was so upset she did not want to speak to him. During their conversation, Appellant paged Epps and when she called him back, she told him that her sister was going to help with a party scheduled for Desiree and that he need not attend. Pugh further testified that later that night, she and Epps went to their parents' home, where Epps told her parents what happened. While they were there, Appellant arrived. Even though Appellant was told that Epps wasn't there, he nonetheless attempted, unsuccessfully, to enter the residence. After Appellant finally left, Epps went to a hotel to spend the night. According to Pugh, Epps went to secure a protection from abuse order the next day but did not complete the application because she was concerned about the effect it would have on her pending divorce and custody case. Pugh testified that at some point during the weekend, Epps vowed not to be physically abused by Appellant or anyone else. Finally, Pugh testified that Epps told her that when Appellant came to pick up his clothes the day before the shooting, he tried to "force himself on" her.

Captain John Keaveney, a police officer who works at the Philadelphia Criminal Justice Center, testified that Epps came to that building on Saturday, September 13, 1997, entered her name in the logbook for protection from abuse requests, and indicated that she was seeking protection from a man named Steven Marshall. The parties stipulated that Epps had the locks on her apartment changed that same day.

Shannon Husbands, who also had a relationship with Appellant, testified that on the day of the shooting, she purchased a cell phone while accompanied by Appellant. She testified that she knew Appellant went by the name Steven Marshall and that when they were buying the cell phone, he put that name in the space marked "Attention Contact Name" on her pur-

chase contract. After Husbands purchased the phone, Appellant drove her to her home in Chester, Pennsylvania.

Octavia Tucker, one of Appellant's former girlfriends, testified that when she was in a relationship with Appellant, Appellant had used the name Steven Marshall. Philadelphia Police Officer Joseph Fischer testified that Tucker had called him on September 18 and told him that Appellant had called her saying that he was headed to Colombia. Fischer also testified that Tucker said she had a protection from abuse order against Appellant and was concerned that Appellant was going to "come and get" her.

Appellant presented an alibi defense at trial. In support of his defense, Appellant presented a witness who testified that Appellant was at a restaurant in Brooklyn, New York, on the day of the shooting and that he had been in and around New York the entire week prior to the incident. The jury nonetheless found Appellant guilty of, *inter alia,* first-degree murder. Following a penalty phase hearing, the jury found one aggravating circumstance, i.e., creation of a grave risk of death to another person in the course of the crime,[2] and no mitigating circumstances, and returned a verdict of death for the murder conviction. This appeal followed.

 While Appellant does not challenge the sufficiency of the evidence, this Court is required in all cases in which a death sentence has been imposed to independently review the record to determine whether the Commonwealth has established the elements necessary to sustain the conviction for first-degree murder. *Commonwealth v. Ockenhouse,* 562 Pa. 481, 756 A.2d 1130, 1134 (2000). In reviewing the sufficiency of the evidence, "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt." *Id.* at 1135. In order to prove first-degree murder, "the

**2.** 42 Pa.C.S. § 9711(d)(7).

Commonwealth must prove that the defendant acted with a specific intent to kill, that a human being was unlawfully killed, that the person accused did the killing, and that the killing was done with deliberation." *Commonwealth v. Hall,* 549 Pa. 269, 701 A.2d 190, 196 (1997). The element of specific intent to kill may be proven by circumstantial evidence and may be inferred from the use of a deadly weapon on a vital part of the victim's body. *Ockenhouse,* 756 A.2d at 1135.

■ Here, we agree with the trial court that the Commonwealth presented more than sufficient evidence to sustain Appellant's conviction for first-degree murder. As noted above, such evidence included the eyewitness testimony of Epps's children that Appellant, with whom they had been living for more than one month, shot and killed their mother in front of them, Eugene Green's testimony that he saw a car matching Appellants' leaving the scene of the crime, and the medical examiner's testimony that Epps was shot in both the head and in the abdomen. *See id.* (specific intent to kill may be inferred by use of deadly weapon on vital part of body).

Turning to the two claims of error that Appellant presents for this Court's review, Appellant first argues that the trial court erred in permitting Pugh to testify that Epps told her that Appellant had struck her. This claim fails.

■ In the instant case, the trial court concluded that Pugh's testimony that Epps had told her that Appellant hit her was admissible because the testimony concerned "the breakdown of the relationship between decedent and defendant and establish[ed] a motive and an ill will between the two." Trial Ct. Op. at 7. Appellant contends that the trial court erred in reaching this conclusion because, according to Appellant, Pugh's testimony was inadmissible hearsay. However, even if Appellant were correct that Pugh's testimony regarding Epps's statement about her relationship with Appellant was inadmissible, any error in admitting the testimony was clearly harmless.

■ "Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2)

the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Robinson,* 554 Pa. 293, 721 A.2d 344, 350 (1999).

Here, any error in admitting Pugh's testimony was harmless in light of the overwhelming evidence of Appellant's guilt that the Commonwealth presented at his trial. Again, as detailed above, both Philip and Desiree Epps testified that Appellant, after arguing with their mother, followed them into their apartment building and repeatedly shot their mother while they were standing with her waiting for the elevator. The children immediately identified the shooter as "Mr. Steve," to both the police and their father, and both children identified Appellant as the shooter from a photograph. The children were clearly familiar with Appellant, as he had been dating their mother for almost a year and, in fact, had been living with them for more than a month. The Commonwealth also presented the testimony of Eugene Green, who had previously seen Appellant driving a black Lexus which looked like the Lexus Green saw pulling out of the parking lot of Epps's apartment building immediately before Philip and Desiree came running up to him, calling for help because their mother had just been shot. In addition to the overwhelming evidence of Appellant's guilt, we also note that Pugh's testimony that Epps told her that Appellant hit her was substantially similar to the untainted testimony from Captain Keaveney that Epps had sought a protection from abuse order against a man named Steven Marshall, which is the name several witnesses testified that Appellant used. Given the overwhelming evidence of Appellant's guilt, and that the challenged testimony was merely cumulative of other evidence properly admitted at trial, any error in admitting Pugh's testimony regarding Epps's statement that Appellant hit her was harmless.

54

■ In his second and final claim, Appellant essentially contends that his trial counsel was ineffective for failing to object to certain testimony that implicated Appellant in prior criminal conduct. Specifically, Appellant contends that counsel should have objected both to Pugh's testimony that Epps said that Appellant tried to "force himself on" her, and to Officer Joseph Fischer's testimony that, during a phone call on September 18, Octavia Tucker stated that she had a protection from abuse order against Appellant. This claim also fails.

■ In order to prevail on a claim of ineffective assistance of counsel, an appellant must show: "(1) that the claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) that, but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999). Evidence of a defendant's prior bad acts is generally inadmissible, and where such evidence is admitted, a defendant is entitled to a jury instruction that the evidence is admissible only for a limited purpose. *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 842 (1989). Where evidence of a defendant's prior bad acts is merely a fleeting or vague reference, however, trial counsel might reasonably decline to object or request a limiting instruction to avoid drawing attention to a reference that might have gone relatively unnoticed by the jury. *Id.* at 843; *see also Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 410–11 (1997).

■ Here, both comments about which Appellant now complains were merely fleeting references made by witnesses during cross-examination by defense counsel. The prosecutor did nothing to emphasize the unprovoked references and never used the references as part of the Commonwealth's case against Appellant. Under these circumstances, an objection by defense counsel might have served only to highlight the otherwise passing comments in the minds of the jurors. *See Commonwealth v. LaCava*, 542 Pa. 160, 666 A.2d 221, 229 (1995) (where witness's reference to prior bad act was simply

blurted out and not emphasized by Commonwealth, counsel was not ineffective for failing to object because objection would have only highlighted fleeting reference). Accordingly, Appellant has not shown that counsel's conduct had no reasonable strategic basis, so as to constitute ineffective assistance of counsel. Moreover, in light of the overwhelming evidence of Appellant's guilt, Appellant has also failed to show a reasonable probability that the outcome of the trial would have been different had trial counsel objected to these two fleeting references. In the absence of such a showing of prejudice, Appellant's ineffectiveness claim necessarily fails. *See Commonwealth v. Blystone*, 555 Pa. 565, 725 A.2d 1197, 1204–5 (1999) (counsel not ineffective for failing to object to mere passing reference to criminal activity where evidence of guilt was overwhelming, such that no prejudice resulted from reference).

Finally, having concluded that neither of Appellant's claims entitle him to relief, we are statutorily required to affirm the sentence of death unless we determine that: (i) the sentence of death was the product of passion, prejudice, or any other arbitrary factor; or (ii) the evidence fails to support the finding of at least one aggravating circumstance. 42 Pa.C.S. § 9711(h)(3). After careful review of the record, we have concluded that the sentence of death was not the product of passion, prejudice or any other arbitrary factor but rather, was based on evidence that overwhelmingly supported Appellant's guilt. We have also determined that the evidence was sufficient to support the aggravating factor found by the jury, that in the course of the murder, Appellant knowingly created a grave risk of death to another person in addition to the victim of the offense (namely, Epps's two children). 42 Pa. C.S. § 9711(d)(7). The Commonwealth specifically established Appellant's creation of such a grave risk with the testimony of Philip and Desiree that they were standing next to their mother by the elevator when Appellant repeatedly shot at her. *See Commonwealth v. Paolello*, 542 Pa. 47, 665 A.2d 439, 456 (1995) (where other person is in close proximity to decedent at time of murder, placing them in zone of danger created by

defendant's actions, there is sufficient evidence to support aggravating circumstance pursuant to 42 Pa.C.S. § 9711(d)(7)).

For the foregoing reasons, we affirm the judgment of sentence.[3]

Former Chief Justice FLAHERTY did not participate in the consideration or decision of this case.

Justice CASTILLE files a concurring opinion in which Justice NEWMAN joins.

Justice CASTILLE, concurring.

I join in the majority's mandate, as well as its analysis concerning (1) the sufficiency of the evidence to prove murder in the first degree, (2) appellant's claim involving allegations of ineffective assistance of counsel, and (3) the propriety of the death sentence under 42 Pa.C.S. § 9711(h)(3). I write separately only to further address appellant's claims that the trial court erred in permitting the victim's sister to testify, over a hearsay objection, to a statement the dead victim made four days before appellant shot her to death.

This case involves the increasingly common circumstance of a criminal defendant, on trial for murdering a human being, now complaining about the admission of the now-deceased victim's out-of-court statement upon hearsay grounds. *See, e.g., Commonwealth v. Paddy,* 800 A.2d 294 (Pa.2002); *Commonwealth v. Laich,* 566 Pa. 19, 777 A.2d 1057 (2001); *Commonwealth v. Chandler,* 554 Pa. 401, 721 A.2d 1040 (1998). Relying upon this Court's opinion in *Chandler,* the trial court held that the statement in this case was admissible under the "state of mind" exception to the hearsay rule. Slip op. at 6–7. The majority does not pass upon the fundamental question of the admissibility of the statement in question, instead concluding that, in light of the overwhelming evidence of appellant's guilt—which included the eyewitness testimony of the victim's young children, who well knew appellant since he had been

**3.** The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor of Pennsylvania. *See* 42 Pa.C.S. § 9711(i).

living with them for over a month, and who witnessed the horrific sight of appellant murdering their mother before their very eyes—any error in its admission was constitutionally harmless.

I would address the question of admissibility directly and conclude that the testimony was properly admitted under this Court's precedent interpreting the state-of-mind exception to the hearsay rule; thus, in my view, there is no "error" whose harmfulness need be examined. "Pursuant to the state of mind hearsay exception, where a declarant's out-of-court statements demonstrate her state of mind, are made in a natural manner, and are material and relevant, they are admissible pursuant to the exception." *Laich*, 777 A.2d at 1060–61 (citations omitted). "Evidence is relevant if it logically tends to establish a material fact in the case, if it tends to make a fact at issue more or less probable, or if it supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* (citation omitted). This Court has consistently held that the out-court-statements of a homicide victim, where probative of the victim's view of his or her relationship with the defendant, are relevant and admissible to show the presence of ill will, malice, or motive for the killing. *See Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 276 (2000), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000) (victim's statement was relevant to his state of mind regarding relationship with defendant and, therefore, admissible to prove presence of ill will, malice, or motive for killing); *Commonwealth v. Puksar*, 559 Pa. 358, 740 A.2d 219, 225 n. 6 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 42 (2000) (victim's statement that he did not trust defendant and that victim and defendant were involved in dispute admissible under state of mind exception to prove presence of ill will, malice, or motive for killing); *Chandler*, 721 A.2d at 1045 (victim's statements "concerning her negative feelings about Appellant and her relationship with him" admissible under state of mind exception because victim's "opinion of Appellant and her marriage to him went to the presence of ill will, malice, or motive for the killing"); *Commonwealth v. Collins*, 550 Pa. 46, 703 A.2d 418, 424–25 (1997), *cert. denied*, 525 U.S.

1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (statements relevant under state of mind exception to prove, *inter alia,* motive).

Here, Stephanie Epps's out-of-court statement to her sister about appellant striking her was part of a larger picture painted by Epps revealing her state of mind regarding her deteriorating relationship with appellant, which ultimately ended in her murder. The evidence showed that, the weekend after the argument during which appellant struck Epps, she attempted to sever all ties with appellant by hiding from appellant, changing the locks at her apartment, and considering filing a petition for a protection from abuse order. Epps also rejected unwanted sexual advances made by appellant while he was retrieving his belongings from her apartment on September 15, 1997, the day before he shot her. Epps's statements to her sister, including the statement which appellant now challenges, were relevant to explain the progression of events leading up to her murder, as well as to suggest motive, malice, and ill will. I continue to agree with cases such as *Chandler,* the case relied upon by the trial judge, that statements such as these are admissible under the state of mind exception because they are probative of "the presence of ill will, malice, or motive for the killing." 721 A.2d at 1045.[1] Since the trial court's ruling unquestionably was correct under our governing precedent concerning the state of mind exception to the hearsay rule, the Court should expressly so hold.

Moreover, I note that this is not at all a case like *Laich.* There, the defendant conceded being the killer but raised a provocation/heat of passion defense, leading a majority of this Court to conclude that evidence concerning the victim's state of mind concerning her relationship with the defendant was somehow rendered "irrelevant" only after the defendant testified and, thus, a hearsay challenge to the victim's out-of-court statements should have been sustained. 777 A.2d at 1062; *but see id.* at 1065 (Castille, J., dissenting) (disagreeing with Court's assessment that nature of defense can belatedly alter

---

1. Although I joined Madame Justice Newman's dissenting opinion in *Chandler,* that dissent concerned a penalty phase issue.

relevance of state of mind evidence). In this case, as the majority notes, appellant denied being the killer and raised a defense of alibi. The victim's out-of-court statements were relevant and admissible. *Laich* did not purport to overrule or modify our legion of cases on the state of mind exception, where such evidence is relevant. Since the *Laich* exception does not apply, our controlling precedent does, and we should follow it.

In any event, I would independently approve the trial court's admission of this evidence in the face of appellant's hearsay challenge because appellant—as proven by evidence entirely independent of the disputed evidence—was himself the unlawful agent of the victim's unavailability for cross-examination. Because my dissenting opinion in *Laich* thoroughly sets forth the basis for my belief that it is absurd to reward such extreme misconduct by blindly sustaining hearsay objections that are the ineluctable evidentiary by-product of the very murder on trial, I need not repeat that analysis here. *See Laich,* 777 A.2d at 1067–69. *See also Commonwealth v. Paddy,* 800 A.2d 294, 310 n. 9 (Pa.2002). It is enough to say that I continue to believe that there is something absurd and deeply offensive "about the notion that one can murder another and then object to admission of the victim's statements on the ground that the witness is 'unavailable' for confrontation at trial." *Laich,* 777 A.2d at 1069. Here, evidence independent of the statements made by Stephanie Epps to her sister shortly before the murder made clear that appellant elected to "confront" his former paramour with a .45 caliber gun in the lobby of her apartment building. This out-of-court confrontation ended when appellant shot at Stephanie Epps no less than four times in front of her very young children, hitting her twice—once in the head and once in the abdomen—and killing her. Having caused Epps's unavailability by murdering her, I would hold that appellant has received all of the confrontation to which he is entitled, and has waived any objection to the introduction of his victim's relevant out-of-court statements.

Justice NEWMAN joins this concurring opinion.