J-S55042-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JASON LINDERMAN, | : | |
| | : | |
| Appellant | : | No. 678 WDA 2015 |

Appeal from the Judgment of Sentence Entered April 16, 2015,
in the Court of Common Pleas of Fayette County,
Criminal Division, at No.: CP-26-CR-0002052-2013

BEFORE:    FORD ELLIOTT, P.J.E., BENDER, P.J.E., and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED NOVEMBER 2, 2015**

Jason Linderman (Appellant) appeals from the judgment of sentence entered following his convictions for two counts each of rape of a child, sexual assault, and corruption of minors.  Upon review, we affirm.

The trial court summarized the background underlying this matter as follows.

> While the exact timeline and locations of these incidents were not always clear during trial, the incontrovertible testimony of the minor victim, K.S., was that when she was five or six years old, [Appellant] raped her on two separate occasions and attempted an assault on a third occasion.  At the time of trial, K.S. was nine years old.  The first incident occurred when K.S. was living in Point Marion.  Living in this house at the time were K.S.[;] her mother, [N.S.;] her younger sisters[;] her younger brother[;] and [Appellant], who was dating [N.S.]  K.S. testified that [Appellant] took off her pants and underwear, removed his pants and underwear as well, and "put his front part in [her] front part" when the two were alone together in the living room.

*Retired Senior Judge assigned to the Superior Court.

A second incident occurred in Smithfield at the home of [M.S.], who is the uncle of [N.S.] Several people resided at this home, including [M.S.] and his children, K.S. and her siblings, [N.S.], a number of friends, and [Appellant]. Like the first incident, K.S. stated that [Appellant] again removed her pants and underwear, removed the same from him, and "put his front part in [her] back part" when the two were alone in K.S.'[s] bedroom.

K.S. also recounted an attempted incident that occurred at [M.S.]'s house while [N.S.] was also present at the home. [N.S.] was upstairs while K.S. and [Appellant] were alone in the living room. "There was a bang," which prompted [N.S.] to come downstairs. K.S. recalled that [Appellant] was "trying to take off [her] clothes." When [N.S.] witnessed [Appellant] attempting to remove K.S.'[s] clothes, [N.S.] slapped [Appellant].

Since November 2011, K.S. has resided with her aunt, [N.M.] Around the time when K.S. first went to live with [N.M.], [N.M.] had K.S. attend counseling sessions because K.S. had just been separated from her half siblings. During these counseling sessions, K.S. first disclosed "that [Appellant] had hurt her … [] female area." K.S. indicated that she waited several years to talk about what [Appellant] had done to her because, as she testified, "I wanted to wait until I could trust someone."

After a police investigation into the statements made by K.S. regarding [Appellant], he was then charged with [the aforementioned crimes].

Trial Court Opinion (TCO), 5/21/2015, at 2-4 (citations omitted).

[A] trial was held from April 9, 2014 to April 11, 2014, which ended in a hung jury. [A] second trial occurred on August 4, 2014 through August 6, 2014. On August 6, 2014, [Appellant] was convicted by a jury [on all counts]. On November 17, 2014, [Appellant] was sentenced to an aggregate period of incarceration of not less than twelve (12) years, nor more than twenty-four (24) years….

- 2 -

[Appellant] filed [timely a] post-sentence motion, [followed by amended post-sentence motions,] alleging that the verdict was against the weight of the evidence and that he received an illegal mandatory minimum sentence. On April 16, 2015, the court held a hearing on [Appellant's] post-sentence motions, denying his second amended motion for a new trial but granting the motion to modify sentence. The court resentenced [Appellant] to an aggregate period of incarceration of not less than eleven (11) years, nor more than twenty-two (22) years…. On April 21, 2015, [Appellant] filed a third amended motion for a new trial, which the court denied. This timely appeal followed.

TCO, 5/21/2015, at 1-2 (unnecessary capitalization omitted).

Appellant presents the following issues for our consideration.

1. Whether the trial court erred in allowing Dr. Mary Carrasco, the medical examiner, to explain to the jury the legal definition of vaginal penetration?

2. Whether the trial court erred in allowing the alleged victim to testify in regards to the conditions in her various homes?

3. Whether the trial court erred in allowing [N.M.], the foster parent, to testify that the alleged victim was not cared for in her home?

4. Whether the trial court erred by allowing [Pennsylvania State] Trooper [Heather] Clem Johnston to testify that [Appellant] told her about an incident when [N.S.], the alleged victim's mother, caught the alleged victim smoking a cigarette and watching pornography?

5. Whether the trial court erred by denying [Appellant's] motion for a new trial when the verdict was against the weight of the evidence?

Appellant's Brief at 3 (unnecessary capitalization omitted).

In considering Appellant's first four issues, which present evidentiary challenges, we apply the following standard of review.

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) (*en banc*) (internal quotation marks and citations omitted).

We are also mindful of the harmless error doctrine:

Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002) (quoting *Commonwealth v. Robinson*, 721 A.2d 344, 350 (Pa. 1999)). "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial." *Commonwealth v. Gonzalez*, 109 A.3d 711, 731 (Pa. Super. 2015) (quoting *Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014)).

Appellant first contends that the trial court erred in allowing Dr. Carrasco to explain to the jury the legal definition of vaginal penetration

- 4 -

because, as an expert, she was "not permitted to provide a legal conclusion to the jury." Appellant's Brief at 9.

Appellant's issue pertains to the following exchange.

[The Commonwealth:] Let's define some words that you used.

[Dr. Carrasco:] Okay.

[The Commonwealth:] You used the word hymen.

[Dr. Carrasco:] Yes.

[The Commonwealth:] And, what is the hymen?

[Dr. Carrasco:] The hymen is the opening to the vaginal area as defined medically. The medical and legal definitions are somewhat different. So, medically, the hymen is the opening to the vaginal area, with a thin membrane at the entrance to what medically we term the vaginal area. Legally, the vaginal area starts the vaginal organ as it is described…

[Appellant's counsel]: Objection, Your Honor. The witness cannot give the legal definition.

THE COURT: She can use the definition of the term as she is using it. It will be up to the [c]ourt to justify any legal definitions that would be relevant during the course of the final instructions.

You can relate the definition to what you are using the term [*sic*].

You can proceed.

BY [the Commonwealth]:

[The Commonwealth:] You can proceed.

> [Dr. Carrasco:] The vaginal organ is the labia material, the outer lips of the vaginal area, and penetration beyond that is considered penetration.

N.T., 8/4/2014, at 46-47.

Upon review, it is clear that Dr. Carrasco's testimony did not provide a "legal conclusion" to the jury. Dr. Carrasco discussed the female anatomy and offered a description of the term "penetration" as used in the law, which was substantially similar to that provided by the trial court in its instructions to the jury.[1] That was not the equivalent of stating a legal conclusion that

---

[1] With respect to the charges of rape of a child and sexual assault, which require penetration, the court instructed the jury as follows:

> A person commits rape of a child when the person engages in sexual intercourse with a child who is less than thirteen years of age.
>
> Sexual intercourse has a particular meaning in criminal law. Sexual intercourse occurs if a man's penis penetrates the female sexual organ or the mouth or the anus of that person.
>
> The slightest degree of penetration is sufficient and no emission of semen is required for sexual intercourse to occur….
>
> ***
>
> In order to find [Appellant] guilty of sexual assault, you must be satisfied that the following three elements have been proven beyond a reasonable doubt:
>
> First, that [Appellant] had sexual intercourse with the victim…. Again, that would involve some penetration however slight.

N.T., 8/5/2014, at 164-65.

- 6 -

the jury should make, such as "the evidence shows that Appellant raped K.S. by penetrating her labia." Thus, Appellant's argument is without merit.

We now address together the evidentiary issues that remain. Appellant challenges certain testimony from K.S., N.M., and Trooper Clem Johnston, pertaining to K.S.'s living conditions and care prior to her being placed in the custody of N.M.

In his second issue, Appellant contends that the trial court erred in allowing the following testimony from K.S.:

> [The Commonwealth:]  Okay. These places that you lived … were they nice places or were they like where the place is you live now with [N.M.]?
>
> [K.S.:]  No.
>
> [The Commonwealth:] How were they different from where you live now with [N.M.]?
>
> [K.S.:] I didn't get full servings of meals, I didn't get…
>
> [Appellant's counsel]: Objection, Your Honor, relevancy.
>
> THE COURT:  I don't see that it is a problem.  Is it background information?
>
> [The Commonwealth]: Yes, it is background information, and I will be calling [N.M.] to testify regarding certain things.
>
> THE COURT:  You can proceed.
>
> [The Commonwealth]:  Thank you.
>
> BY [the Commonwealth]:

- 7 -

[The Commonwealth:] So, you didn't get regular meals, what else? Did you have any problems with your mouth, with your teeth?

[K.S.:] Yes. My mom never took me to the dentist even though she had rides, she just didn't want to.

N.T. 8/4/2014, at 72-73.

Appellant's third issue presents a challenge to the following exchange involving testimony provided by N.M.:

[The Commonwealth:] [N.M.], when you first got [K.S.], could you describe what she was like and how that has changed from that time until now?

[N.M.:] When we first got her, I mean, she was just in really bad shape. She had really severe head lice. My mom and I we had to come [*sic*] her hair out for a month to get rid of it because she just had it for so long, it was just really infested. The first night we had her, and we had fed her and everything, and I give her a toothbrush to brush her teeth and…

[Appellant's counsel]: Objection, Your Honor. Relevancy.

THE COURT: [The Commonwealth]?

[The Commonwealth]: Background as to it was reported two years…

[Appellant's counsel]: We are not in a Children and Youth Services case.

[The Commonwealth]: May we approach?

THE COURT: Sure.

(At this time, an off the record side-bar conference was held.)

N.T., 8/5/2014, at 47-48.

In his fourth issue, Appellant argues that the trial court improperly admitted the following testimony of Trooper Clem Johnston:

[The Commonwealth:]  Trooper, [Appellant's counsel] asked you about the interview that you had with [Appellant].  Correct, he just asked you about that?

[Trooper Clem Johnston:] Correct.

[The Commonwealth:]  And, he asked you if he adamantly denied doing this.

[Trooper Clem Johnston:] Correct.

[The Commonwealth:]  Let's talk about the statements specifically.  Did he tell you anything about [K.S.] that he might have observed as to what she was doing at some point in time?

[Appellant's counsel]:  Objection, hearsay and relevance.

THE COURT:  Well, I believe that the door into the statement has been opened and at this point, [the Commonwealth] has the right to show the context or complete the statement at this point.  So, we will overrule the objection.

\*\*\*

[The Commonwealth:]  During the course of that interview, specifically, what did he tell you about [K.S.] and what things he observed her doing at age six?

[Trooper Clem Johnston:]  He did tell me about a time that she accused him of biting, of biting her.  He told me about an instance where [K.S.] was in the bedroom at [M.S.]'s house smoking a cigarette and watching pornography when she was six.

[The Commonwealth:]  And, that's when she was—he said that she was six?

[Appellant's counsel]: Objection, Your Honor. For the record, I still maintain that this is irrelevant and hearsay.

THE COURT: We will sustain the ruling that I have already ruled on. You can complete the statement that has been brought out by the defense.

[The Commonwealth]: That's all I have.

N.T., 8/5/2014, at 70-71.

Appellant contends that the testimony above was irrelevant, as it has no bearing on whether Appellant raped K.S., and because Appellant is not K.S.'s father and has no legal responsibility for her care. Appellant's Brief at 11, 14. Appellant further claims that Trooper Clem Johnston's testimony was hearsay and that, contrary to the trial court's conclusion, he did not "open the door" to the testimony. *Id.* at 13-14. Appellant contends that he was prejudiced by the testimony of K.S., N.M., and Trooper Clem Johnston because the Commonwealth was trying to label Appellant as a "bad parent" and imply that "K.S. was not cared for in her home," that "there was a pattern of abuse towards K.S. in the home," and that "an atmosphere of sexual promiscuity existed in [the] home." *Id.* at 10-11, 15. Appellant further alleges that the Commonwealth presented the testimony to compensate for the fact that it "failed to present any physical evidence of sexual abuse" and to inflame the jury. *Id.* at 12, 15.

Assuming *arguendo* that the trial court improperly admitted the testimony of K.S., N.M., and Trooper Clem Johnston set forth above, we

- 10 -

agree with the Commonwealth that the testimony was not so prejudicial and inflammatory as to warrant a new trial. There is no indication in the record before us that the Commonwealth placed undue emphasis on K.S.'s living conditions or care, or that it had any significant impact on the jury in rendering its verdict. Thus, any error in the admission of the above testimony was harmless, and Appellant is not entitled to relief on these issues.

In his final issue, Appellant presents a weight-of-the-evidence challenge.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

*Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011) (citations and internal quotation marks omitted).

Appellant argues that the verdict is against the weight of the evidence given the following: (1) the absence of any physical evidence of sexual abuse, as demonstrated by the testimony of Dr. Carrasco and N.S. to that

effect; (2) "the many inconsistencies in K.S.'s testimony;" (3) the fact that N.S. testified "that she knew that at least one of K.S.'s allegations were [*sic*] false[;]" and (4) that Appellant "had no opportunity to commit these crimes" because he was seldom, if ever, alone with K.S., as demonstrated by testimony from N.S., M.S., and Appellant. Appellant's Brief at 16-18.

As explained by the trial court, Appellant's contention regarding the lack of physical evidence of sexual abuse as demonstrated by Dr. Carrasco's testimony is "refuted by the fact that the rapes occurred years before K.S. eventually reported it to the authorities, and years before Dr. Carrasco conducted a physical examination on her." TCO, 5/21/2015, at 11. The remainder of Appellant's arguments amount to little more than a challenge to the credibility determinations made by the jury. As stated above, "[i]t is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Houser*, 18 A.3d at 1135-36. The trial court concluded that "the verdict does not shock one's sense of justice," TCO, 5/21/2015, at 12, and we discern no abuse of discretion in that determination. Thus, Appellant is not entitled to relief on his weight-of-the-evidence claim.

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 11/2/2015