J-S48026-17

2018 PA Super 22

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT |
| | OF PENNSYLVANIA |
| Appellee | |
| | |
| v. | |
| | |
| TODD FRANKLIN MCCARTHY | |
| | |
| Appellant | No. 345 MDA 2017 |

Appeal from the Judgment of Sentence Entered October 21, 2016
In the Court of Common Pleas of York County
Criminal Division at No: CP-67-CR-0002433-2015

BEFORE:  OTT, STABILE, and PLATT,* JJ.

CONCURRING AND DISSENTING OPINION BY STABILE, J.: **FILED FEBRUARY 06, 2018**

I respectfully concur in part and dissent in part.  Although I fully agree with the learned Majority that the trial court did not abuse its discretion in denying Appellant's Rule 600 motion, I conclude that the evidence of waste was irrelevant in this case and its introduction and admission into evidence caused unfair prejudice to Appellant by inflaming the jury.  Accordingly, I would vacate Appellant's judgment of sentence and remand this case to the trial court for a new trial.

Appellant argues that the trial court abused its discretion in allowing the Commonwealth to introduce evidence of waste by discussing the condition and value of the victim's (his elderly mother) house, while Appellant was in charge

_____

* Retired Senior Judge assigned to the Superior Court.

of her care. Appellant contends that the evidence of waste was not relevant to establish the underlying charges of theft by unlawful taking, access device fraud, or forgery. Specifically, Appellant argues that the trial court permitted the Commonwealth to present evidence that, while the victim was in Appellant's care, the value and condition of her house had diminished through Appellant's action or inaction.

> It is settled:
>
> [a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357-58 (Pa. Super. 2015) (internal citations omitted). Moreover, an appellant bears a "heavy burden" to show that the trial court has abused its discretion. *Commonwealth v. Christine*, 125 A.3d 394, 398 (Pa. 2015). "[A]n appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by appellee." *Commonwealth v. Moore*, 937 A.2d 1062, 1073 (Pa. 2007) (citation omitted).

Relevance is the threshold for admissibility of evidence. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008). Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401; *Commonwealth v. Drumheller*, 808

A.2d 893, 904 (Pa. 2002). "Evidence that is not relevant is not admissible." Pa.R.E. 402. In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403; *see Commonwealth v. Kouma*, 53 A.3d 760, 770 (Pa. Super. 2012) (stating that even when evidence meets the relevance requirements, "such evidence may still be excluded where its probative value is outweighed by the danger of unfair prejudice.").

> However, [e]vidence will not be prohibited merely because it is harmful to the defendant. [E]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case. . . . This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand[.]

*Kouma*, 53 A.3d at 770 (citation omitted); *see* Pa.R.E. 403 cmt. (defining "unfair prejudice" as "a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially.").

Instantly, my review of the trial transcript reveals that the Commonwealth extensively mentioned and referenced the value and condition of the victim's house to demonstrate to the jury that Appellant had allowed the wasting of the victim's assets. Specifically, the Commonwealth elicited testimony regarding the dissipation of the victim's asserts from three witnesses who indicated that Appellant had allowed the victim's house to fall

- 3 -

into disrepair. In other words, the Commonwealth emphasized that Appellant had caused the value of the victim's house to diminish by failing to maintain it and pay taxes on it. According to the Commonwealth, this evidence was relevant and necessary to establish Appellant's criminal intent with respect to the charged crimes of theft by unlawful taking, access device fraud, and forgery.

At the start of trial, during the Commonwealth's opening statement, the Commonwealth mentioned that Appellant had caused the victim's house to go "into tax sale." N.T. Trial, 9/12/16, at 96. With this backdrop, the Commonwealth elicited from its first witness, Angie Walker, the following testimony regarding the condition of the victim's house.

> Q. I'm going to show you some documents, some pictures that have been marked Commonwealth's Exhibits 83 through 91. Could you take a look at those photographs and let me know when you are done.
>
> A. (Witness complied)
>
> Q. Do you recognize what's depicted in those photographs?
>
> A. It's her home.
>
> Q. Now, is that what her home looked like at the time that you were visiting with her?
>
> A. No.
>
> Q. What's the difference about it?
>
> A. There's a lot more clutter. I mean, she had a little bit maybe back in her bedroom, but it was picked up in the home.
>
> Q. So when you were there would you have characterized her home as relatively neat and cared for?
>
> A. I would have, mm-hmm.

N.T. Trial, 9/12-14/16, at 119-120. The Commonwealth's first witness on the second day of trial also testified about the condition of the victim's house. Megan Schrom, a nursing home administrator at Rest Haven, testified:

> Q. All right, what was the condition of the place at the time that you went?
>
> A. It was really disgusting, like the cars had like cans and cigarette ashes. The house had actually, I think a tax notice or some notice on the door, taped to the door. There was multiple notices on the door. I didn't read them, but—
>
> Q. Okay. Anything else about the physical condition of the place?
>
> A. Dingy, dirty. Looked like it was going to fall down.

*Id.* at 172. Finally, the Commonwealth's last witness, Attorney Amanda Snoke Dubbs, who administered the estate of the victim, testified about the value and condition of the victim's house.

> Q. Okay, Now, the house being just in her name, what was done with it?
>
> A. It was sold at a real estate auction after her death.
>
> Q. Okay. Do you know what the house sold for?
>
> A. Not off the top of my head.
>
> Q. Okay.
>
> A. I have the file with me if you need me to get my file.
>
> Q. Would that refresh your recollection?
>
> A. Yes.
>
> Q. Okay.
>
> . . . .
>
> Q. I'm sorry, did you get those?
>
> A. I did not.

Q. Could you get them please? Do you know what the house sold for?

A. Yes. It's $57,500.

Q. Okay. And do you know what the house was assessed at?

A. I don't think I have that information with me. No. I don't have that with me.

. . . .

Q. Do you recognize this document?

A. Yes, I do.

Q. Okay. And just if you can identify the document and then tell me if that helps refresh your recollection.

A. This was a memo that I drafted to Detective Snell to answer questions that he had regarding the estate, and it was dated June 26, 2016.

Q. And did you put the information regarding the assessment in there?

A. Yes, I did.

Q. Okay. And what was the assessed value?

A. The assessed value was $104,650.

Q. So it sold for just under half?

A. Correct.

Q. Or just over half. I'm sorry.

A. Correct.

Q. Are you familiar with the condition of the property—

A. Yes.

Q. –when it was sold?

A. Yes.

. . . .

Q. I'm going to show you what's been previously marked as Commonwealth's Exhibits 83 through 91. Would you take a

look at those photographs, and do those photographs accurately reflect the condition of the house at the time that it was sold?

A. Yes.

. . . .

Q. Any money that went from the sale of the house was part of the value of the estate, correct? If it had sold for more, it would have been a higher estate to be divided?

A. Yes. Correct.

Q. And so the same is true for all of the assets, correct?

A. Correct.

*Id.* at 260-263.

On cross-examination, the Commonwealth questioned Appellant on his late payments of property taxes on the victim's house. *Id.* at 278. Lastly, in its closing argument, the Commonwealth pointed out to the jury that Appellant diminished the victim's estate, in part, by failing to pay the property taxes on her house. *Id.* at 313-14. During jury deliberations, the trial court permitted, over Appellant's objections, Exhibits 83 through 91, depicting the condition of the victim's house, to go out to the jury. *Id.* at 342-44.

As I stated earlier, Appellant was brought to trial on the charges of theft by unlawful deception, access device fraud and two counts of forgery. Theft by unlawful taking is defined as follows: "A person is guilty of theft if he ***unlawfully takes***, or ***exercises unlawful control over***, ***movable property*** of another with the ***intent to deprive*** him thereof." 18 Pa.C.S.A. § 3921(a) (emphasis added). A person commits the offense of access device fraud if he: "uses an access device to obtain . . . property or services with knowledge that . . . access device was issued to another person who has not

authorized its use." 18 Pa.C.S.A. § 4106(a)(1)(ii). Lastly, forgery is defined as follows:

> (a) . . . . A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> . . .
>
> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs . . . (2) of this subsection.

18 Pa.C.S.A. § 4101(a)(2), and (3). As the foregoing indicates, the crimes with which Appellant was charged in this case involved the deprivation or the taking of property from another without authorization.

With this in mind, I fail to understand the relevance of the admitted evidence demonstrating the dissipation of the victim's assets. Specifically, in agreeing with the Commonwealth's position, the trial court permitted the introduction of evidence relating to the value and condition of the victim's house for purposes of establishing waste.[1] In so doing, the trial court agreed with the Commonwealth's contention that evidence of waste was relevant to show Appellant's intent in committing theft by unlawful taking, access device

---

[1] I note that neither the Majority, nor the trial court, nor the Commonwealth cite any legal authority for the proposition that evidence of waste may be admitted in a trial where a defendant is charged with theft, access device fraud or forgery. Indeed, my exhaustive research has yielded no such authority.

fraud and forgery. The wasting or dissipation of assets generally implicates a breach of a fiduciary duty, an issue that, as the Majority agrees, normally is addressed in the orphans' court. Even assuming that Appellant wasted the victim's assets, I fail to see how that would be relevant to establishing whether he committed theft by unlawful taking, access device fraud or forgery. Evidence of waste is not of consequence in determining whether Appellant committed the aforementioned crimes because it does not prove whether Appellant intended to unlawfully take control over movable property to deprive the victim of that property. Accordingly, I conclude that the trial court abused its discretion in permitting the Commonwealth to introduce evidence of waste by emphasizing the value and condition of the victim's house. The evidence was not relevant.

Having concluded that the evidence of waste was irrelevant in this case, I now must determine whether the introduction and admission into evidence of the value and condition the victim's house was prejudicial to Appellant. As noted, "[e]xclusion is limited to evidence so prejudicial that it would inflame the jury to make a decision based on something other than the legal propositions relevant to the case." *Kouma*, *supra*.

Here, upon reviewing the record, I am constrained to agree with Appellant that he suffered prejudice. The prejudicial effect of allowing the Commonwealth to introduce into evidence of waste by discussing the value and condition of the victim's house was staggering and highly inflammatory. First, the Commonwealth alluded to the value and condition of the victim's

property in its opening statement. The Commonwealth mentioned that the victim's house went into tax sale. Second, of its eight witnesses, three testified about this issue, in particular Appellant's dissipation of the victim's assets. The Commonwealth strategically highlighted the issue of waste. On the first day of trial, the Commonwealth questioned its first witness, Ms. Walker, about the condition of the victim's house. In this regard, it introduced into evidence exhibits depicting the condition of the victim's house while Appellant was in charge of her care. Similarly, it questioned its first witness on the second day of trial, Ms. Schrom, about the same issue. The Commonwealth then questioned its last witness, Ms. Dubbs, extensively on the value of the victim's house and showed her the exhibits depicting the condition of the victim's house. Third, the Commonwealth was permitted to admit into evidence the exhibits demonstrating the condition of the victim's house. Fourth, by raising the issue of waste, the Commonwealth also was able to point out to the jury that other individuals also suffered because of Appellant's actions. Specifically, the Commonwealth emphasized that Appellant was not the victim's sole beneficiary or heir. Fifth, on cross-examination, the Commonwealth questioned Appellant about his failure to pay property taxes on the victim's house. Sixth, the Commonwealth alluded to the wasting of the victim's assets during its closing argument. Seventh, the Commonwealth was permitted to publish and send the exhibits depicting the condition of the victim's house to the jury during deliberations.

In light of the foregoing, I conclude that the trial court's decision to permit the introduction of evidence relating to the waste of the victim's assets, specifically her house, caused unfair prejudice to Appellant. As discussed, the issue of waste largely implicates Appellant's discharge of his fiduciary duties. By emphasizing waste, the Commonwealth pointed out to the jury that Appellant failed to discharge his fiduciary duties properly. As such, evidence of waste inflamed the jury, because it heard testimony that had no bearing on whether Appellant committed theft by unlawful taking, access device fraud or forgery.[2] I, therefore, would vacate Appellant's judgment of sentence and remand this case to the trial court for a new trial.[3] *See Commonwealth v. Davis*, 650 A.2d 452, 455 (Pa. Super. 1994) (noting that "[t]he remedy for . . . the improper admission of evidence, is the award of a new trial.").

Accordingly, I respectfully concur in part and dissent in part.

---

[2] The harmless error doctrine would not be applicable because, as discussed, the error here prejudiced Appellant and the prejudice to Appellant was not *de minimis*, the admitted evidence was not merely cumulative of other untainted evidence which was substantially similar, and prejudicial effect of the error was not insignificant. *See Commonwealth v. Hutchinson*, 811 A.2d 556, 561 (Pa. 2002).

[3] Given my disposition of this evidentiary issue, I would not address Appellant's final issue challenging the discretionary aspects of sentencing.