NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3311
_____

STEVEN HUTCHINSON,

Appellant

v.

SUPERINTENDENT GREENE SCI;
THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE COMMONWEALTH OF PENNSYLVANIA

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-03931)
District Judge: Honorable John R. Padova
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 3, 2021

Before: AMBRO, HARDIMAN, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed: June 23, 2021)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Steven Hutchinson appeals from the District Court's denial of his petition for writ of habeas corpus under 28 U.S.C. § 2254. We granted a certificate of appealability as to one of his ineffective-assistance-of-counsel claims—based on his trial and appellate counsel's failure to challenge the prosecution's use of peremptory strikes in a racially discriminatory manner. Because Hutchinson failed to show he suffered any prejudice from the alleged error, we affirm the District Court's decision.

I.

In 1999, a Pennsylvania jury found Hutchinson guilty of first-degree murder and other offenses in connection with the death of his girlfriend, Stephanie Epps. *See Commonwealth v. Hutchinson*, 811 A.2d 556, 558 (Pa. 2002) ("*Hutchinson I*"). Epps' two young children identified Hutchinson as the person who shot and killed their mother in the lobby of her apartment. *Id.* A neighbor corroborated the children's testimony and saw Hutchinson's car leaving the crime scene. *Id.* at 559. The prosecution presented additional circumstantial evidence, including that Hutchinson was physically abusive to Epps, she sought a protective order against him, and he fled the area before his arrest in Las Vegas, Nevada. *Id.* at 558–59. The jury sentenced Hutchinson to death, and on direct appeal the Pennsylvania Supreme Court affirmed his conviction and sentence. *Id.* at 558.

Hutchinson then filed a petition under Pennsylvania's Post Conviction Relief Act ("PCRA") asserting several claims, including ineffective assistance of his trial and direct appeal counsel. *See Commonwealth v. Hutchinson*, 25 A.3d 277 (Pa. 2011) ("*Hutchinson*

2

*II*"). The PCRA Court denied Hutchinson's guilt phase claims but set aside his death sentence. *Id.* at 284. The Pennsylvania Supreme Court affirmed the PCRA Court's decision. *Id.* at 322. In 2013, Hutchinson was resentenced to life imprisonment without the possibility of parole.

At the end of the line in the state court proceedings, Hutchinson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the federal District Court, once again raising a host of claims. In a thorough 113-page report and recommendation, Magistrate Judge Richard A. Lloret recommended that the District Court deny all of Hutchinson's claims. It adopted the report and recommendation in its entirety.

We granted Hutchinson's request for a certificate of appealability on a single issue—"whether the District Court erred in denying [his] claim that his trial and appellate counsel were ineffective for failing to assert a claim that the prosecution had used peremptory strikes in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986)." JA 147.

## II.

The Supreme Court held in *Batson* that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." 476 U.S. at 86. A trial court must engage in a three-step process to determine if there was a *Batson* violation. *See United States v. Savage*, 970 F.3d 217, 266 (3d Cir. 2020) (citation omitted). At step one, the defendant must make a *prima facie* showing that the prosecution exercised a peremptory challenge on the basis of race. *Id.* If the showing has been made, the prosecution must offer a race-neutral basis for the strike. *Id.* Finally at

3

step three, the trial court must consider the parties' submissions and determine whether the defendant proved purposeful discrimination. *Id.*

Here, Hutchinson did not raise a *Batson* objection at trial or on direct appeal. Instead, he argued in the PCRA proceeding that his trial and direct appeal counsel were ineffective for failing to challenge the prosecution's peremptory strikes based on *Batson*. *Hutchinson II*, 25 A.3d at 286. As support, he points out that the prosecutor struck black members of the venire at approximately twice the rate of non-black members. *Id.* at 286–87.[1] Further, he alleged a policy of racial discrimination within the Philadelphia District Attorney's Office based on two training lectures. *Id.* at 288.

The Pennsylvania Supreme Court rejected Hutchinson's argument. As the lack of a contemporaneous objection during *voir dire* makes it difficult to apply the *Batson* three-step framework on post-conviction review, the Pennsylvania Supreme Court applied its approach in *Commonwealth v. Uderra*, 862 A.2d 74, 87 (2004), which essentially dispenses with *Batson*'s first two steps and requires Hutchinson to "bear[] the burden in the first instance and throughout of establishing actual, purposeful discrimination by a preponderance of the evidence." *Hutchinson II*, 25 A.3d at 287 (internal citation

---

[1] According to Hutchinson, the prosecutor struck 10 of 16 black members of the venire it had the opportunity to strike (62.5%) and only struck 8 of 27 white members it had the opportunity to strike (29.6%). Hutchinson's Br. at 19. Hutchinson thus believes the prosecutor used 10 of 18 total peremptory challenges against black members of the venire (55.6%) and the resulting jury had 1 black person, 10 white persons, and 1 person of unknown race. *Id.* at 6–7. As the District Court explained, it deferred to the Pennsylvania Supreme Court and the PCRA Court, which disagreed with several of Hutchinson's calculations. *See Hutchinson II*, 25 A.3d at 287–88; Dist. Ct. Op. at 12. We do not need to resolve this factual dispute, as we reject Hutchinson's argument even if his calculations were correct.

4

omitted). It then concluded that Hutchinson's "proffered evidence does not establish actual, purposeful discrimination in jury selection." *Id.* at 289.

In his federal habeas petition, Hutchinson continues to press the same argument. However, the District Court took a different approach to reject his request for relief. First, it accepted the Magistrate Judge's recommendation that the Pennsylvania Supreme Court's reliance on *Uderra* was unreasonable, and then proceeded to review the ineffective assistance claim *de novo*. Based on its fresh review of the parties' arguments and evidence, it concluded that "Hutchinson has failed to establish a *prima facie* case of discriminatory jury selection in violation of *Batson*." Dist. Ct. Op. at 16.

### III.

We agree with the District Court that Hutchinson's ineffective-assistance-of-counsel claim cannot prevail.[2] Assuming without deciding that the Pennsylvania Supreme Court's reliance on the *Uderra* rule was an unreasonable application of *Batson*, Hutchinson's claim still does not pass muster under *de novo* review. *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (explaining that if a state court's adjudication of a habeas claim is an unreasonable application of federal law, then a federal court "must then resolve the claim without the deference AEDPA [28 U.S.C. § 2254(d)] otherwise requires"). To succeed on an ineffective-assistance-of-counsel claim under the Supreme Court's landmark decision in *Strickland v. Washington*, 466 U.S. 668 (1984), Hutchinson

---

[2] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We issued a certificate of appealability and have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253.

"had to show both that his counsel provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

We first conclude that Hutchinson failed to demonstrate prejudice as a result of his counsel's alleged deficient performance. To establish prejudice, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). While Hutchinson does not dispute that he must demonstrate prejudice to prevail on his claim, he argues that because a successful *Batson* challenge means the jury composition is unconstitutional, "prejudice necessarily attaches to his ineffectiveness claim." Hutchinson's Br. at 38.

Hutchinson's position does not accurately describe the current state of the law. It is true that the Supreme Court has acknowledged that a claim of race discrimination in jury selection is a structural error, meaning an error that "affect[s] the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1904, 1907–08 (2017) (internal quotation marks and citation omitted). But Hutchinson is not raising a *Batson* claim, he is raising an ineffective-assistance claim based on his counsel's failure to raise a *Batson* claim. While a successful *Batson* challenge preserved and then raised on direct appeal "necessitate[s] automatic reversal," the Supreme Court has not taken a position on whether the "result should be any different if the error[] [was] raised instead in an ineffective-assistance claim on collateral review." *Id.* at 1911–12; *see also Baxter v. Superintendent Coal Twp. SCI*, --- F.3d ----, 2021 WL 1310343, at *4 (3d Cir. Apr. 8,

6

2021) ("A showing of structural error, however, does not always trigger a presumption of prejudice."). Further, the Supreme Court has not identified the failure to raise a *Batson* objection as one of the limited circumstances where prejudice may be presumed. *See Weaver*, 137 S. Ct. at 1915 (Alito, J., concurring in judgment) ("The Court has relieved defendants of the obligation to make this affirmative showing [of prejudice under *Strickland*] in only a very narrow set of cases in which the accused has effectively been denied counsel altogether.").

In this context, we see no reason to relieve Hutchinson of the obligation to demonstrate prejudice. And given the overwhelming evidence against him, we do not believe the alleged deficient performance of his counsel had a reasonable probability of affecting the outcome. *See Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) ("It is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied."). As noted above, ample eyewitness testimony, from the victim's two children and a neighbor, supported Hutchinson's conviction. *Hutchinson I*, 811 A.2d at 558–59. The prosecution also presented substantial evidence that Hutchinson had a history of being physically abusive and his victim feared for her life. *Id.* at 559. "In light of this evidence, [Hutchinson] cannot show he was prejudiced" by his counsel's alleged deficient performance. *See Baxter*, --- F.3d at ----, 2021 WL 1310343, at *5.

Because we conclude Hutchinson's ineffectiveness claim fails on the prejudice prong of *Strickland*, we do not need to reach whether his counsel's performance was indeed deficient—that is, whether counsel should have raised a valid *Batson* claim but

failed to do so. For completeness, we note that even if the statistics presented by Hutchinson were enough to establish a *prima facie Batson* claim, they are often insufficient to carry the day. *See Riley v. Taylor*, 277 F.3d 261, 293 (3d Cir. 2001) ("[T]he statistical evidence . . . is relevant but not dispositive."); *cf. Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) ("More powerful than these bare statistics, however, are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve."). However, Hutchinson "cited no occurrence at trial, no words of the prosecutor or defense counsel or trial judge, and no action by the court that could lead to an inference of racial discrimination in jury selection." *Hutchinson II*, 25 A.3d at 289. Instead, he relies only on bare statistics and two lectures delivered twelve and nine years before his trial. *Id.*; *see Williams v. Beard*, 637 F.3d 195, 219 n.19 (3d Cir. 2011) (explaining that the "infamous Jack McMahon training videotape" referenced by Hutchinson is "of little significance where the petitioner was unable to show that the district attorney responsible for his prosecution had seen the tape or followed its recommendations") (internal citation omitted). And the fact Hutchinson's own trial counsel struck eight black members of the venire could further undercut any claim of racially discriminatory behavior by the prosecution. *Hutchinson II*, 25 A.3d at 288. Without more evidence, a *Batson* challenge likely would not have been successful if raised.

\*    \*    \*    \*    \*

For the reasons explained above, we disagree with Hutchinson's argument that his trial and appellate counsel rendered ineffective assistance by failing to raise a *Batson* objection.  We thus affirm the District Court's denial of his federal habeas petition.