J-S36042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL C. JACKSON, | |
| Appellant | No. 1649 MDA 2015 |

Appeal from the Judgment of Sentence May 12, 2015
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004391-2014

BEFORE:  MUNDY, J., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:          **FILED MAY 09, 2016**

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Dauphin County following Appellant's conviction by a jury on the charge of simple assault, 18 Pa.C.S.A. § 2701(a)(1).  Appellant contends (1) the evidence is insufficient to sustain his conviction, (2) the jury's verdict is against the weight of the evidence, and (3) the trial court erred in precluding admission of evidence regarding the prior bad acts of the victim.[1]   We affirm.

Appellant was arrested, and represented by counsel, he proceeded to a jury trial.  The trial court has exhaustively set forth the facts as derived from the testimony and evidence presented at trial as follows:

_____

[1] We have renumbered Appellant's issues.

*Former Justice specially assigned to the Superior Court.

On the evening of February 19, 2014, Mr. Kenneth Towles ("Mr. Towles") and his ex-paramour[,] Ms. Joanne Brown ("Ms. Brown"), and her daughter[,] Ms. Bonita Brown ("Bonita") departed from McClay Street apartments at or around 6:00 [p.m.] and proceeded to the local neighborhood establishment known as Lucky 7 ("the Bar"). [N.T.] Trial, 3/3/15, at 18. [Appellant] was present at the Bar and witnessed Mr. Towles, Ms. Brown, and Bonita consuming alcoholic beverages and socializing throughout the evening. [*Id.* at 58-59]. He himself was also consuming alcohol. [*Id.* at 59]. At or around 8:00 [p.m.], Mr. Towles, Ms. Brown, and Bonita departed from the Bar. [*Id.* at 22, 59]. Upon exiting, Mr. Towles was holding on to the back of Ms. Brown's coat because he was concerned for her safety on the slippery walkway. [*Id.* at 19, 59]. [Appellant] did not leave the Bar at this time. [*Id.* at 59]. Once outside, Mr. Towles' actions were misinterpreted by Ms. Brown who complained about having the back of her coat held. [*Id.* at 19-21]. Subsequently, a dispute arose between Mr. Towles and Bonita in which Bonita fell and may have had her hair pulled out. [*Id.*]. At this point, Mr. Towles left both Ms. Brown and Bonita in the parking lot and proceeded back to his residence at McClay Street apartments alone where he dosed of in [a] chair while watching television. [*Id.* at 21-22].

Bonita then proceeded back to the Bar where she sat and conversed with [Appellant] about the altercation. [*Id.* at 60]. At this time, Ms. Brown's whereabouts were unknown. [*Id.* at 22-24]. Later that evening[,] Bonita asked [Appellant] to walk her home. [*Id.* at 60]. Bonita lived with her mother in the same apartment complex as Mr. Towles and it was not uncommon for Ms. Brown to sometimes spend the night with Mr. Towles. [*Id.* at 33, 60]. [Appellant] and Bonita departed from the Bar and proceeded back to McClay Street apartments at or around 11:00 [p.m.]. [*Id.* at 22, 61].

Upon arriving, Bonita wanted to check on her mother, who she believed was in Mr. Towles' apartment, and asked [Appellant] to stay with her. [*Id.* at 60-61]. Bonita and [Appellant] then proceeded to Mr. Towles' apartment where Bonita knocked on the door, [thus] awakening Mr. Towles. [*Id.* at 22, 61]. Subsequently, Mr. Towles opened the door and confronted [Appellant] and Bonita. [*Id.*]. [Appellant] assert[ed] [at trial] that, at this time, Mr. Towles began berating Bonita with names and came at him "like a gorilla[,]" causing him to

- 2 -

fear for his safety. [*Id.* at 61-62]. Mr. Towles, on the other hand, assert[ed] [at trial] that he was calm and simply inquired, "What's up[?]" [*Id.* at 22]. [In response], Bonita sprayed Mr. Towles twice in the face with mace and [Appellant] physically struck Mr. Towles with his fists multiple times[,] causing him to fall to the floor. [*Id.* at 22-23, 66]. Upon regaining his composure, Mr. Towles retreated back into his residence and locked the door. [*Id.* at 25]. He then proceeded to the bathroom and began to rinse out his eyes when he heard his window shatter. [*Id.* at 25-26].

At this point, Mr. Towles believed he saw [Appellant] and Bonita standing outside the broken window. [*Id.* at 26]. Mr. Towles instinctively reached for an old broken wooden rifle to scare off Bonita and [Appellant]. [*Id.*]. [Appellant] then yelled, "Shoot, motherfuckers." [*Id.* at 26, 66]. After which, he and Bonita proceeded to leave[,] and Mr. Towles subsequently called 911. [*Id.*]. Officers from the Harrisburg City police department and paramedics responded. [*Id.* at 40-41].

Upon arriving on scene, Officer Amy Bright ("Officer Bright") and her partner, along with other officer[s] from the Harrisburg City police department, [proceeded into the] McClay Street apartment [complex.] [*Id.* at 41]. Mr. Towles then let them into his apartment where Officer Bright witnessed the broken window and blood everywhere. [*Id.* at 41-42]. Mr. Towles was disoriented and clearly injured. [*Id.* at 42-43]. As a result, Mr. Towles was transported to Pinnacle Health Harrisburg Hospital where he received stitches to repair a laceration to his lip and was treated for a broken jaw. [*Id.* at 31]. [Appellant] was charged with a summary offense[.] [*Id.* at 44]. This was then upgraded to simple assault when Officer Bright received evidence confirming that Mr. Towles['] jaw had in fact been broken. [*Id.*].

Trial Court Pa.R.A.P. 1925(a) Opinion, filed 11/19/15, at 1-3.

At the conclusion of all testimony, the jury convicted Appellant of simple assault as to Mr. Towles, and on May 12, 2015, the trial court sentenced him to one month to twenty-three months in prison, as well as directed the payment of fines and restitution. On May 13, 2015, Appellant

filed a timely, counseled post-sentence motion, and on September 17, 2015, Appellant filed a counseled notice of appeal. Thereafter, Appellant's post-sentence motion was denied by operation of law.[2] All Pa.R.A.P. 1925 requirements have been met.

Appellant's first contention is the evidence was insufficient to sustain his conviction for simple assault. Specifically, he avers the Commonwealth did not disprove his claim of self-defense beyond a reasonable doubt. In this regard, Appellant contends Mr. Towles initiated the attack by attacking him "like a gorilla," Appellant struck Mr. Towles to stop the attack, and Appellant left when Mr. Towles fell to the ground. Appellant's Brief at 19.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of

_____

[2] We observe that Appellant prematurely filed his notice of appeal while his post-sentence motion was pending. *See Commonwealth v. Borrero*, 692 A.2d 158, 159-60 (Pa.Super. 1997). However, as noted, the post-sentence motion was subsequently denied by operation of law, and thus, we will not quash the appeal. *See Commonwealth v. Little*, 879 A.2d 293, 296 n.6 (Pa.Super. 2005).

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa.Super. 2010)

(citations omitted).

The Crimes Code defines Simple Assault as follows:

**(a) Offense defined.**—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1) (bold in original).

"[U]nder Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa.Super. 2005).

The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa.Super. 2014) (citation

omitted).

Here, Appellant relevantly testified at trial that, when Mr. Towles

answered the apartment door, he called Bonita names and was aggressive

"like a gorilla." N.T., 3/3/15, at 61-62. He indicated Bonita maced Mr. Towles, who was "like dazed [by] the mace[,]" and then Mr. Towles came at Appellant as if he was going to attack him, at which point Appellant punched him "two or three times." *Id.* at 61-66.

In contrast to Appellant's testimony, Mr. Towles testified that he opened the door, asked the couple "[w]hat's up[,]" and Appellant "immediately took his left hand and connected to [Mr. Towles'] head with it." *Id.* at 22. He testified Bonita then sprayed him with mace and Appellant "kept on hitting [him]." *Id.* at 23. He indicated he fell to the ground and Appellant "stood over top of [him] swinging and hitting [him]." *Id.* He denied hitting Appellant or Bonita, indicating "I just opened the door. After that, it was just raining fists." *Id.* at 25.

The jury was free to believe Mr. Towles' testimony, which established the elements necessary for simple assault, as well as established Appellant provoked the attack and could have safely retreated prior to hitting Mr. Towles. This does not render the evidence insufficient. *See Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062, 1066 (1995) (holding that "the jury was free to disbelieve the evidence proffered by [the] appellant in support of [his] claim of reduced intent and/or self-defense"); *Commonwealth v. Carbone*, 524 Pa. 551, 574 A.2d 584, 589 (1990) (providing that "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a

jury is not required to believe the testimony of the defendant who raises the claim"). Accordingly, we find no merit to Appellant's first claim.

Appellant's next contention is the jury's verdict is against the weight of the evidence.[3] Specifically, he avers Mr. Towles' "testimony was unreliable, contradictory, and inconsistent with the remainder of the testimony." Appellant's Brief at 16. In this regard, he argues Mr. Towles testified that Appellant struck him ten times; however, Officer Bright testified that she was informed that Mr. Towles was punched one time. *Id.* Moreover, Appellant notes that Mr. Towles testified at the preliminary hearing that he observed Appellant kick in his window; however, he told police he saw Appellant throw a chair through the window, and at trial he testified he did not know how Appellant broke the window. *Id.* at 16-17. Finally, Appellant suggests that Mr. Towles testified at trial that Appellant said, "Shoot motherfucker[,]" but then changed his testimony, indicating Appellant said, "Shoot nigger." *Id.* at 17.

The Supreme Court has set forth the following standard of review for weight of the evidence claims:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
> * * *

_____

[3] Appellant presented his weight of the evidence claim in his timely post-sentence motion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

* * *

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054-55 (2013) (citations and quotation omitted). In order for an appellant to prevail on a challenge to the weight of the evidence, "the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa.Super. 2003).

Mr. Towles testified that Appellant punched him multiple times, "way over 10," including after he fell to the ground. N.T., 3/3/15, at 25. While Officer Bright acknowledged her police report reflected that Appellant punched Mr. Towles once with a closed fist, the jury was free to weigh the testimony and resolve the conflicts in the testimony. The fact the jury chose to believe Mr. Towles' testimony in this regard does not render the verdict against the weight of the evidence. *See Clay*, *supra*.

Additionally, as to the alleged discrepancy in Mr. Towles' testimony/reports of how Appellant broke his window, as well as Mr. Towles'

discrepancy in whether Appellant said "motherfucker" or "nigger," the jury was free to believe all, part, or none of the testimony and weigh the discrepancies. Appellant asks this Court to re-weigh the evidence and assess the credibility of the witness presented at trial, a task that is beyond our scope of review. Simply put, the verdict is not so contrary to the evidence as to shock the conscience, and, thus, the trial court properly denied Appellant's weight of the evidence claim. **Sullivan**, **supra**.

In his final contention, Appellant avers the trial court erred in precluding admission of evidence regarding the prior bad acts of Mr. Towles. Specifically, he argues "evidence of Mr. Towles' prior acts of violence should have been admitted in order to determine the reasonableness of [Appellant's] claim of self-defense." Appellant's Brief at 24-25. Appellant suggests he should have been permitted to testify regarding a previous episode wherein Mr. Towles was violent towards Ms. Brown. **Id.** at 25. In response, the Commonwealth argues that any error in this regard is harmless. We agree with the Commonwealth.

At trial, Appellant testified that he defended himself against Mr. Towles and "[t]his isn't the first time this happened between [him] and Mr. [Towles]." N.T., 3/3/15, at 63. Appellant was then permitted to testify regarding a prior incident, which allegedly occurred two or three months previously, wherein Mr. Towles became drunk and aggressive towards Appellant. **Id.** at 63. Moreover, when defense counsel asked if this was the

only other incident when Mr. Towles had become aggressive, Appellant testified, "No. I seen him when he was in his apartment. Me and him and [Ms. Brown] were sitting there drinking beers." *Id.* at 63.[4]

Additionally, on cross-examination by the prosecutor, Appellant reiterated that, on a previous occasion, he had to defend himself against Mr. Towles and opined that "[h]e's a bully." *Id.* at 71. Appellant also testified on cross-examination that, on the night in question, Bonita was "looking for her mother[, Ms. Brown,] to make sure her mother was okay because of [] prior behavior with [Mr. Towles] and her mom." *Id.* at 73.

The record reflects that the jury was made aware of Mr. Towles' alleged prior bad acts of violence. Thus, Appellant is not entitled to relief. ***Commonwealth v. Hutchinson***, 571 Pa. 45, 811 A.2d 556, 561 (2002) ("Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis[.]") (quotation marks and quotation omitted)).

Moreover, in light of the overwhelming evidence of Appellant's guilt, we conclude that any error in the preclusion of the evidence did not prejudice Appellant or the prejudicial effect of any error was *de minimis.* ***Id.*** ("Harmless error exists where:. . .(3) the properly admitted and

_____

[4] At this point, the trial court sustained the Commonwealth's objection to further testimony regarding the alleged previous altercation between Mr. Towles and Ms. Brown. *Id.* at 63-65.

uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.") (quotation marks and quotation omitted)). Appellant admitted that he appeared at Mr. Towles' door late at night and he did not strike Mr. Towles until after Mr. Towles was dazed by the mace sprayed by Bonita.[5]  ***See*** N.T., 3/3/15, at 61.  Appellant's own testimony established, at the very least, that he could have safely retreated from Mr. Towles' front door, thus ending the incident.  However, instead, Appellant remained and struck Mr. Towles.  In short, any error in precluding the testimony regarding Mr. Towles' alleged prior violent acts towards Ms. Brown was so insignificant by comparison to the properly admitted evidence of guilt that it is clear that any error could not have contributed to the verdict. ***Hutchinson***, ***supra***.

For all of the foregoing reasons, we affirm.

---

[5] For instance, Appellant testified as follows at trial: "[Mr. Towles] and [Bonita] got to arguing.  He was coming out like aggressive toward her. That is when she sprayed him.  Then he turned around.  He was like dazed with that mace[.]  He was coming at me.  That's when the altercation started."  N.T., 3/3/15, at 61.

- 11 -

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/9/2016</u>